INTERNATIONAL & GREAT NORTHERN RAILROAD CO. v. J. C. STARLING.

Delivered May 19, 1897.

**1.  Railroad—Speed of Train—Negligence—Question for Jury.**

Whether it is negligence to run a train over a town crossing at from twenty to thirty miles an hour, where the view of its approach, after reaching a point 200 yards from the crossing, was obstructed, is a question for the jury.

**2. Same—Crossing Accident—Contributory Negligence—Question for Jury.**

It is a question for the jury whether a driver is guilty of contributory negligence in whipping up his horses and attempting to cross a railroad track in front of a train which he saw approaching.

**3. Same—Speed of Train—Negligence—Evidence.**

The jury may determine from all the circumstances that the speed at which a train was run constituted negligence, although no witness testifies in terms that the speed was dangerous.

**4. Same—Same—Same—Charge of Court.**

A charge that, "If defendant's employes negligently ran the train over the crossing at a dangerous and unusual rate of speed, and the injury to plaintiff and his wife was the natural and probable result of such negligence, then defendant would be guilty of negligence," is not subject to the objection that it instructed the jury that the running of the train at a dangerous or unusual rate was negligence.

APPEAL from Houston. Tried below before Hon. J. R. BURNETT.

*G. H. Gould,* for appellant.—When one enters upon a railroad track, under circumstances which make it obviously an act of imminent danger, on account of the rapid approach of a train, and receives injuries from a collision, he can not recover on account of his contributory negligence, although he thought he had time to cross, and missed his calculation because the train increased its speed after he first saw it. Railway v. McKernan, 82 Texas, 204; Hoover v. Railway, 61 Texas, 503; 2 Shearm. & Redf. on Neg., 4 ed., p. 286, and note 1; Pierce on Railroads, p. 345, and authorities cited under note 9; Belton v. Baxter, 13 Am. Rep., 578.

*Adams & Adams,* for appellee.—We submit that the undertaking by plaintiff to cross ahead of a train which he knows is approaching may or may not be contributory negligence. All the facts surrounding the occasion must be considered, and contributory negligence is a question of fact to be passed on by the jury. Railway v. Waller, 56 Texas, 331; Railway v. Moore, 69 Texas, 157.

JAMES, CHIEF JUSTICE.—The appellee, Starling, lived about fifteen miles from the town of Lovelady, and was in town with his family in a two-horse wagon. The railroad ran through the town north and south, and its depot building was south of and alongside a public crossing. About 142 yards on the south, on a switch, was a seed house, and about half way between the seed house and the depot was a cotton platform. At the time of the occurrence in question there were box cars on the switch. This switch left the main track 247 yards south of the crossing.

Appellee was starting home, having to cross the track to do so. He started from a store which was on the west side of the track, about 100 yards from the crossing. When he started, he says that he saw the train coming from the south, running very slowly, about 400 or 500 yards off, and hurried his horses up in order to get over the crossing, to avoid being delayed by the train if it stopped at that station. The engine reached the crossing at the same time he did, and in the collision he and his wife and his property sustained injuries for which the jury allowed $750.

In view of the action of the jury, we find as conclusions of fact that the injuries occurred through the negligence of defendant, and that appellee did not by negligence contribute to it. The testimony will necessarily be discussed more in detail in connection with the conclusions of law.

*Opinion.*—There was no error in overruling the exceptions to the petition.

We will for convenience consider first the sixth assignment of error, which gives a synopsis of the evidence, and asserts that the verdict is contrary to the evidence. The propositions involved in this assignment are the material ones in the case, viz., that the evidence establishes that there was no negligence on the part of the defendant, and further, that it establishes that plaintiff's own negligence caused his injury. While we think both of these propositions present close questions, yet upon a full consideration of the evidence, we believe a submission of the issues to the jury was proper.

First, as to negligence of the defendant's servants: While railroad trains may ordinarily be run any rate of speed, yet the circumstances may make this negligence. As stated in Elliott on Railroads, section 1160: "In the absence of any statutory requirement, there is no obligation upon the company to slacken the speed of its trains under ordinary circumstances at country crossings, and a high rate of speed may be perfectly proper at country crossings, although it might be considered negligence at a crossing in a populous city. Whether it is negligence or not usually depends on the circumstances of the particular case, and the rate of speed when alleged as one of the grounds of recovery may generally be shown in connection with the other circumstances as evidence of negligence."

The place of this accident was a public crossing in a town. As the train neared the crossing, the view of the approach to it was obstructed for a considerable distance, probably 200 yards, by the seed house, cotton platform, and box cars along the switch, and by the depot, and until the crossing itself was reached. It seems to us that it could not be stated as a matter of law that there was no negligence in running a train over the crossing, under such circumstances, at the rate, as some of the testimony is, of from twenty to thirty miles an hour, and therefore it was a question for the jury. It was also in evidence that it was the law or rule of the company that freight trains were to go through stations under control, which meant a reduced rate of speed, estimated variously by the witnesses up to as high as twelve miles an hour. This rule, evidently made for the safety of employes and the public at such points, might, we think, be considered as a circumstance tending to show that a much greater speed at such places was not the exercise of reasonable care.

In reference to contributory negligence: Cases may easily be conceived where a person undertaking to cross a track in advance of an approaching engine would be inevitably held guilty of contributory negligence, and appellant claims this to be such a case. One can not pass in front of a rapidly moving car, upon a nice calculation of the chances, without doing

so at his peril. Elliott on Railroads, sec. 1095. The evidence in the record was sufficient to sustain a finding that he acted negligently, but the question with us is, is this necessarily so? The plaintiff knew of the obstructions, knew that the train was approaching, and when he once started for the crossing gave no heed to anything else than to cross the track as soon as he could, and urged his horses in such a manner that when he neared the crossing he could not have stopped them. These facts may all be true, and yet the fact that he would cross the track considerably in advance of the engine, and that the act was not one attended with danger, may have been warranted by the circumstances surrounding him at the time in such manner as to make his act that of a reasonably prudent person. It would not be contended that, because a train is approaching a great distance off, no one could cross the track except at his peril. The plaintiff testified that when he started from Murchison's store, and had gone a short distance towards the crossing, the train disappeared from his view behind the obstructions; that when he started the train was about 400 or 500 yards off, going very slowly, about four or five miles an hour. The evidence indicates that plaintiff was mistaken in estimating the distance, for it could not have been that far away, going at that speed, and disappeared behind the seed house, which was only 142 yards from the crossing, when he had gone only a short distance from the store. Still no violence would have been done to the evidence to conclude that, when he started, the engine was at or near the switch, which was 247 yards from the crossing. He testified positively that it was beyond it, and going slowly at the time. He testified that he knew that trains, after passing the switch, always increased their speed, but he did not testify that he knew that they increased it to the extent there is evidence to show it did in this instance. His having knowledge that, after passing the switch, the speed of trains was increased, implies that he had seen trains pass through these yards, and which presumably were run under control as the rule of the company required, and, as the conductor testified, was the rate at which the train in question was running. Under all the circumstances, we think it was a question for the jury to determine whether or not plaintiff's conduct was consistent with ordinary care. From these views it follows that there is no merit in the second, third, fifth, eighth, ninth, tenth, and eleventh assignments.

The fourth assignment is that the court erred in refusing the following charge: "Defendant asks the court to instruct the jury that the defendant had the right to have a depot building, cotton platform, seed house, and box cars there, and it was not negligence on defendant's part to have them there." This charge would have been misleading, in that its tendency was to cause the jury to ignore facts that it was proper for them to consider in respect to negligence in the handling of the train at that place.

The seventh assignment complains of this clause in the charge: "If defendant's employes negligently ran the train over the crossing at a dangerous and unusual rate of speed, and the injury to plaintiff and his wife was the natural and probable result of such negligence, then defend-

ant would be guilty of negligence," because there is no law prescribing the rate of speed at which trains shall run, and no evidence in the case that the train was running at an unusual rate of speed, or at a dangerous rate of speed. It was not necessary for some witness to testify in terms that the speed was dangerous. This was a fact which the jury could determine from all the circumstances. That the speed of the train on this occasion was unusual appeared from the testimony of the conductor, which showed the limit of speed allowed, which presumably was usual, and there is evidence that the train was moving at double that rate.

The charge is not subject to the objection that it instructed the jury that the running the train at a dangerous or unusual rate was negligence, but left to them the fact of negligence.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.