## LANCASTER et al. v. BROWDER et al.* (No. 9958.)

(Court of Civil Appeals of Texas. Fort Worth. April 22, 1922. Rehearing Denied June 10, 1922.)

1. Railroads ⟿337(5)—Want of signals held not proximate cause of injury.

Where a pedestrian crossing a railroad track saw the train, negligence in failing to sound the whistle and bell was not the proximate cause of her injury.

2. Railroads ⟿348(5) — Negligent speed shown.

Evidence that the train which struck a pedestrian was running after dark at a speed of 35 to 50 miles an hour, down grade and approaching a village of 800 inhabitants, held to sustain a finding that it was negligently operated.

3. Railroads ⟿350(26) — Pedestrian's contributory negligence held for jury.

A pedestrian, who attempted to cross in front of an approaching train after dark, though she could see its headlight, but could not accurately estimate its distance or speed, held not guilty of contributory negligence as a matter of law.

4. Trial ⟿352(5)—Charge submitting special issues held not to assume negligence.

The charge of the court in submitting, immediately following the issue whether the train was operated at a negligent rate of speed, the issue whether the negligence in operating the train at a reckless rate of speed, if, the jury find it was so operated, was the proximate cause of the accident, was not erroneous as misleading the jury to believe that the court was of the opinion the train was negligently operated.

5. Appeal and error ⟿1062(1)—Submitting issue of damages to adult son, who received only $1, is not prejudicial.

Error, if any, in submitting to the jury the issue of damages occasioned by reason of his mother's death to an adult son who had left home, was not prejudicial, where the jury allowed the son only $1 as damages, since the submission of that issue could not have influenced the jury to award greater sum to the other plaintiffs.

6. Appeal and error ⟿1004(1)—Verdict for death not set aside if court is unable to say it was clearly excessive.

A verdict, awarding for the death of a woman $11,000, of which $5,000 was apportioned to the husband, $1,000 to a married daughter, and $5,000 to an unmarried daughter, cannot be set aside, where on consideration of all the evidence the court is unable to say that the amount awarded was clearly excessive.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Action by J. P. Browder and others against J. L. Lancaster and others, as receivers of the Texas & Pacific Railway Company. Judgment for plaintiffs, and defendants appeal. Affirmed.

Shropshire & Bankhead, of Weatherford, and Geo. Thompson and R. S. Shapard, both of Dallas, for appellants.

Ritchie & Ranspot, of Mineral Wells, for appellees.

DUNKLIN, J. On November 24, 1920, Mrs. Julia Browder was struck and killed by a locomotive and train of the Texas & Pacific Railway Company. This suit was instituted by her surviving husband, J. P. Browder, and their children against J. L. Lancaster and Chas. L. Wallace, receivers of the railway company, to recover damages for her death, and, from a judgment in favor of the plaintiffs, the defendants have appealed.

The accident occurred in the town of Gordon, near the railway depot, at a place where one of the public streets or roads crosses the railway track. The time of the accident was approximately 6 or 7 o'clock in the evening, and it was dark. The train that struck Mrs. Browder was a passenger train known as the "Sunshine Special," and was running late. It was coming from the east and bound west, and Mrs. Browder was walking north over the crossing on the occasion of the accident. The train was not scheduled to stop, and did not stop, in the town of Gordon, but kept on its course west after the accident happened, apparently without knowledge on the part of its operatives that Mrs. Browder had been killed. After the train had passed the station Mrs. Browder's body was found on the north side of the railway track, some 12 or 14 feet from it, and approximately 60 feet west of the crossing. When found, life was extinct. There was a wound above her right ear, and her skull, right arm, and shoulder and right hip and right leg were all fractured. There were also bruises on her right side. Her hat was found about 30 feet east of her body, and her spectacle frame was lying 10 feet east of her body. At the time of the accident her large Collie dog was with her, and he too was killed, and his body was found on the same side of the railway track, more than 20 feet west of where Mrs. Browder's body was picked up. Gordon is a town with a population estimated by witnesses to be about 600 or 800 inhabitants, and business houses are built on both sides of the railway track. Mrs. Browder was postmistress, and at the time of the accident was going from her home on the south of the track to the post office on the north side, for the purpose of making up mail for two expected railway trains, and which was due to be ready by 8 o'clock that night. There was a mail box on the south side of the railway track, and as she was going to the post office she gath-

ered up mail from it and proceeded on her way. Letters so taken up were found scattered along on the north side of the track west of the crossing. The locomotive was equipped with a bright electric headlight, which cast a glaring reflection down the track, and was visible to any one approaching the crossing in question and while on the crossing for a distance of approximately one-half mile down the track; the track being practically a straight track for that distance east of the crossing.

Witnesses for the plaintiff testified that they heard the locomotive sound four whistles, which were answered in a moment with one short blast, all sounded about one-half mile east of the crossing, but further testified that they heard no other whistles and heard no bell rung from that point up to the crossing. They further testified that those whistles were sounded as the train came out of a cut, which was near another public road crossing east of the one in controversy. According to further testimony given by them the residents of the town generally understood those whistles to be given for the Gordon station, and those whistles were sounded at what is commonly known as the whistling post. They futher testified that the railway track was down grade from a point near the railway cut to the station. Several of the plaintiffs' witnesses testified to the speed of the train, which they estimated to be from 35 to 50 miles an hour, some of them characterizing the speed as "very rapid" and others as "running fast." One of plaintiffs' witnesses, Hugh Siggers, who had lived in Gordon for 17 years and was engaged as a clerk for one of the merchants in that town, testified in part, as follows:

"I know that headlights on engines are very bright. I know that it is very difficult to tell the exact distance a train is away from you when standing directly in front of an electric headlight. A train running down grade at a rapid rate of speed would make less noise except for the steam. I stated I had been in the railway business. I have lived in Gordon several years, and have had occasion to notice trains passing through Gordon."

The witness further testified:

"I had known Mrs. Browder right at 17 years. I saw her that evening immediately before she was killed. I saw her at the mail box, and I also walked down the sidewalk with her. She did take the mail out of the mail box. I gave her some letters to post. She was taking the mail out of the box, or had taken the mail out of the box, and I came out of the restaurant and started down the sidewalk and walked something like 10 or 15 feet with her. The conversation was ʹshe was going to the office and remarked she would carry the letters for me, unless I had business by the office. I gave her the letters and walked on down 40 or 50 feet to the corner of the bank, and then turned back. I was talking casually with her during that time. She was in her usual good spirits, pleasant and agreeable.

"After I had walked down the street with her a short ways and left her she continued on north. I turned and started back to the restaurant. I did observe Godwin and Miss Gould and Miss Rhyne near the restaurant. I observed them driving up the street and stopping there. It was dark then. I would estimate it to have been about 7 o'clock in the evening. It was on the 24th day of November, 1920. I did observe Mrs. Browder again. She was crossing the railroad track when I observed her, going onto the railroad track. I saw the train at the instant I saw Mrs. Browder on the track. The headlight was burning very bright. She was in the glare of the headlight at the moment I saw her on the track. She was walking in a peart gait, walking as she usually did; she was a fast-walking woman. She was walking fast at the moment I saw her. I would estimate the train was something about 100 feet away at that time, something like that, moving at a rapid rate of speed. There was something occurring that caused me to take my eyes off of Mrs. Browder. It was Mr. Godwin and Miss Gould and Miss Rhyne driving up in the cut-down 'hoopie,' and Miss Gould went to step out of the car. Immediately after that I observed the train passing on through the town over the crossing by the station. * * *

"At the moment I saw Mrs. Browder on the track with this train approaching, had it been running at its usual and ordinary rate of speed, considering the rate she was traveling, in my opinion, she could have cleared the track. When I saw Mrs. Browder there on the tracks the dog was traveling right at her side."

Another witness, T. E. Bell, who had been in business in Gordon about 25 years, testified in part as follows:

"I think it is hard to tell the distance a train is away when it is shining in your face. * * * I had known Mrs. Browder about 30 years before she was killed. Her place of business was about 100 feet east of my store. I had seen her frequently passing back and forth over the railroad tracks. I suppose she was perfectly familiar with the tracks and the passing of the trains there. I saw her nearly every morning coming across the tracks. I believe I told her once she had better be careful about crossing the tracks, as a train might hit her. I had not seen her passing back and forward in front of moving trains any more than other parties. I think I made a remark to her about crossing the tracks. I just talked to her the one time I believe."

According to further testimony of plaintiffs' witnesses the crossing in controversy was one of the principal public crossings in use by people residing in the town and those visiting the town from the country.

In plaintiff's petition it was alleged that the defendants were guilty of negligence, which was the proximate cause of Mrs. Browder's death, in the following particulars: (1) In running the train at a "high or

reckless" rate of speed; (2) in failing to ring the bell while approaching the crossing where the accident happened; (3) in failing to sound the whistle for that crossing. In answer to special issues the jury sustained each of those allegations of negligence, and further found that each act of negligence so sustained was the proximate cause of the death of Mrs. Browder.

One of the defenses specially pleaded by the defendants was, in substance, that Mrs. Browder was herself guilty of negligence which was the sole proximate cause of her death, or, at all events, proximately contributed to cause the same, in that she voluntarily and recklessly exposed herself to the danger of being struck by the train by either walking or standing upon the crossing, when she knew that the train was approaching, and knew also of the patent and obvious danger of so placing herself in that position. But in answer to other special issues the jury found against that defense.

In the court's charge the test submitted to the jury for determining whether or not there was negligence in the failure to sound the whistle and ring the bell of the locomotive before it reached the crossing was the common-law test of a failure to exercise ordinary care, without reference to the statutory requirements that in approaching a public crossing the locomotive whistle shall be blown and the bell rung at a distance of at least 80 rods from the crossing, and that the bell shall be kept ringing until the train passes the crossing. See article 6564, V. S. Tex. Civ. Statutes.

The defendants introduced no evidence whatever, and the case was submitted to the jury solely upon the testimony offered by the plaintiffs.

[1, 2] We think it conclusively appears from the uncontroverted facts and testimony already recited that Mrs. Browder saw the headlight and knew of the approach of the train before and at the time she went upon the crossing. That being true, it follows conclusively that neither the negligence of the defendants found by the jury in failing to sound the whistle nor the negligence in failing to ring the bell could be held to be the proximate cause of Mrs. Browder's death, since the only purpose that could have been accomplished by giving such signals would be to warn pedestrians of the approach of tne train, a fact which Mrs. Browder knew independent of such signals. H. & T. C. Ry. Co. v. Nixon, 52 Tex. 19. Hence, the only negligence found by the jury which could be properly considered as a proximate cause of the accident, and therefore sufficient to support the recovery, in the absence of contributory negligence on the part of Mrs. Browder, was the negligence found by the jury in operating the train at a high and reckless rate of speed when it came into the town of Gordon, and we are of the opinion that the evidence was sufficient to sustain that finding.

[3] The principal contention made here by appellants is that the testimony introduced conclusively established the defense of contributory negligence on the part of Mrs. Browder as a conclusion of law, and therefore the court erred in refusing the defendants' request for a peremptory instruction to the jury to return a verdict in the defendants' favor. Appellants have cited a great array of decisions of the Supreme Court and Courts of Civil Appeals of this state to support that assignment. We shall not undertake a review of all of those authorities, but shall confine ourselves to a brief discussion of the leading ones. In I. & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 105, a judgment in favor of Edwards against the railroad company for damages for personal injuries sustained by him was reversed, and judgment rendered in favor of the railroad company by our Supreme Court. In that case the following was said:

"The evidence, without contradiction, shows that the plaintiff walked along the road at night, approaching the railroad obliquely, with his side towards it, until he came near the crossing, when he turned with the road across the track, and was struck as he reached the center thereof. The train was visible by its electric headlight upon a straight track for a mile or more before it reached the crossing, and the noise of its motion was plainly audible. Plaintiff admits that, before stepping on the track, he neither looked nor listened for the train, although he was familiar with the crossing, and knew of the frequent passing of trains, and that he could have seen and heard it, had he done so. All of the other evidence is to the same effect. He relies alone upon the fact, which the evidence is sufficient to prove, that the whistle was not blown nor the bell rung as required by the statute, claiming that he was listening for those signals, and, because he did not hear them, did not look for the train nor pay attention to the noise it made.

"The law is well settled that a traveler approaching a railroad crossing must exercise ordinary prudence in going upon the track to see that he may do so with safety. He cannot excuse the absence of all care by showing that those in charge of a train have also been guilty of negligence. This is the precise attitude of the plaintiff, when he claims that he was not bound to look out for himself until the statutory signals were given. His claim cannot be admitted without denying the rule which exacted the duty of due care on his part, a duty as binding on him as was the duty of giving the signals binding on the defendant. The case is easily distinguished from those in which this court has held that, under the facts thereof, it would have been improper for the courts to have instructed that it was the duty of the travelers to do any particular thing as a measure of due care, such as to look and listen, it being the function of the jury to say what precautions were called for by the particular situation. Those cases pre-

sented issues for the jury to determine as to whether or not the care taken was sufficient, and not bare facts, like those in this case, establishing that no care whatever was taken and offering no excuse for its absence except a reliance on the other party. * * *

"While persons using a railway crossing have the right to expect that the law requiring signals will be obeyed, this is not a substitute for the duty of exercising care for themselves, and they are not excused from that duty by the fault of the other party. No case in this court has allowed a recovery upon facts such as these, and the judgment cannot be permitted to stand without abolishing the rule, recognized by all authority, requiring the exercise of ordinary prudence on the part of persons crossing railroad tracks."

In the case of Sanches v. S. A. & A. P. Ry. Co., 88 Tex. 117, 30 S. W. 431, a judgment in favor of the railroad company, from which Sanches appealed, was affirmed, and in the opinion of the court the following was said:

"Plaintiff, Sanches, in leaving one of the depots of defendant, stepped from the platform onto the track and started to walk along same, when he was struck from behind by an engine and seriously injured, for which he seeks to recover damages. At the time he stepped on the track he knew the train which struck him was expected to arrive about that time, and the direction from which it was coming. He did not see or hear the train as it approached. His view of the track in the direction from which it came was unobstructed for about a mile, and there was nothing to obstruct such view when he stepped on the track, at which time he looked in front of him to see where he was stepping, and did not raise his eyes from the place on which he was stepping. He could not hear the noise of the approach of the train or hear the sound of the bell or whistle, on account of the noise produced by the escape of steam from an engine standing near the depot.

"The above is substantially the testimony of plaintiff as to the circumstances attending the accident, and no evidence is found in the record tending in the slightest degree to destroy its probative force on the issue of plaintiff's negligence in going upon the track. Ordinarily, negligence is a fact to be found or inferred from the testimony; but where from the testimony on the issue of negligence no inference but negligence can be drawn, it becomes a question of law, and the court may instruct the jury that negligence has been established. Railway v. Ryon, 80 Tex. 61. Such cases do not often occur. We are of opinion, that the undisputed evidence above stated, given by plaintiff himself, established the fact that he was guilty of negligence in going upon the track, and that the court might have so instructed the jury. Therefore, plaintiff cannot complain of any errors in the charge on the issue of his negligence. Indeed, if the servants of the defendant had not discovered the peril of plaintiff, whereby a new duty devolved upon them, the court should have instructed a verdict for defendant. Railway v. Ryon, 70 Tex. 58; Railway v. Ryon, 80 Tex. 60."

The case of Haass v. G. H. & S. A. Ry. Co., 24 Tex. Civ. App. 135, 57 S. W. 855, was an appeal from a judgment rendered in favor of the railway company upon an instructed verdict; the suit being by the widow and children of Philip Haass, deceased, for damages occasioned by his death, which occurred on the railway track. The judgment of the trial court was affirmed, and in the opinion rendered by the Court of Appeals in that case the following was said:

"From the evidence we find that the undisputed facts show conclusively that Philip Haass, the deceased, was guilty of contributory negligence in going on appellant's railroad track, at midday, with full knowledge of the fact that a train was rapidly approaching, with no obstructions to his view of the train, just a few feet in front of a rapidly moving engine, and that such negligence was the proximate cause of his death."

A writ of error prosecuted from that decision was denied by our Supreme Court.

The case of S. & E. Ry. v. Dean, 76 Tex. 73, 13 S. W. 45, was a suit by the surviving wife and children of John Dean, who was run over and killed by cars that were being switched on a railroad side track. According to the uncontroverted testimony of witnesses who saw the accident, the approaching cars could have been seen by Dean as he approached the track and before he attempted to cross it, but he did not look in that direction, as he was looking in another direction. After referring to such testimony, the Supreme Court said:

"This evidence is not contradicted. But one conclusion can be drawn from it, and that is that when there was nothing to prevent his seeing his danger he heedlessly stepped upon the track at the very moment of the collision. It may be conceded that the manner of propelling the cars was, under the circumstances, an act of negligence upon the part of the defendant, and yet it must be held that the deceased exercised no care, and that his own want of it was the immediate cause of his injury. There is nothing in the record to indicate that after it became evident that he was going to place himself in a position of danger, it would have been possible for the defendant, by the use of any degree of skill or watchfulness, or by the use of any known appliances, to have stopped the cars in time to have saved him. The fact that on account of the noise of the mill he could not hear the approach of the cars cannot be held to excuse him from the duty of using his eyes to see them. If anything, it emphasized that duty. We think the defense of contributory negligence was sustained by the evidence, without there being anything to the contrary."

To the same effect is G. H. & S. A. Ry. Co. v. Ryon, 80 Tex. 61, 15 S. W. 588.

Like decisions under similar circumstances were rendered by the Courts of Civil Appeals in the following cases, in each of which a writ of error was denied by our Supreme

Court: M., K. & T. Ry. v. Martin, 44 S. W. 703; Bennett v. St. L. S. W. Ry., 36 Tex. Civ. App. 459, 82 S. W. 333.

The following decisions by the Courts of Civil Appeals were to the same effect as the foregoing authorities, although it does not seem that the Supreme Court ever passed on applications for writs of error in those cases: T. & P. Ry. v. Fuller, 5 Tex. Civ. App. 660, 24 S. W. 1090; St. L. S. W. Ry. v. Branom (Tex. Civ. App.) 73 S. W. 1064; T. & N. O. Ry. v. Brown, 2 Tex. Civ. App. 281, 21 S. W. 424; G., H. & S. A. Ry. v. Polk (Tex. Civ. App.) 63 S. W. 343; St. L., B. & N. Ry. v. Paine (Tex. Civ. App.) 188 S. W. 1033; Fontana v. P. A. & T. Co. (Tex. Civ. App.) 235 S. W. 1098.

However, the latest decisions of our Supreme Court, as we interpret them, have departed from its former decisions on the same subject, and we have been unable to reconcile them therewith.

Trochta v. M., K. & T. Ry. (Tex. Com. App.) 218 S. W. 1038, was a suit by the surviving wife and child of Franciska Trochta to recover for his death, which occurred when he was struck by a train on a public road crossing. The evidence showed that the deceased could have seen the approaching train for a distance of 194 yards after he came within 50 feet of the crossing, and when he had advanced 15 feet further he could have seen the train at a distance of at least a half mile. Upon special issues submitted, the jury found that the statutory signals for the crossing had not been given, and that the train was being operated at a reckless rate of speed, and upon these facts found that the defendant was guilty of negligence; also that the employés in charge of the locomotive were guilty of negligence in not checking the speed of the train after they discovered the peril of the deceased. There was a further finding by the jury that before driving upon the crossing the deceased did not look, listen, or do any other act to discover the approaching train, but that his failure to do so did not constitute negligence on his part. Upon the finding last mentioned the Court of Civil Appeals reversed the judgment, holding that if the deceased did not exercise any precaution to discover whether or not a train was approaching, that fact constituted contributory negligence as a conclusion of law which precluded a recovery, and that plaintiffs were not entitled to recover upon the issue of discovered peril. In an opinion of the Commission of Appeals, speaking through Justice Strong, it was said that it was unnecessary to determine whether or not the deceased was guilty of contributory negligence, but that the record showed that plaintiffs were entitled to recover upon the issue of negligence of the defendant's employés after the peril of deceased had been discovered. Accordingly,

it was recommended to the Supreme Court that the judgment of the Court of Civil Appeals be reversed, and that of the trial court be affirmed. The Supreme Court, to whom the opinion of the Commission of Appeals was submitted, speaking through Chief Justice Phillips, said:

"Under the facts of this case there is in our opinion no warrant for not applying to it the general rule prevailing in this state, that the failure of one about to go over a public railroad crossing to look and listen for an approaching train, does not, of itself, constitute negligence as a matter of law. Here, the question as to whether, under all the circumstances, Trochta was guilty of negligence in not looking or listening for the train, was for the jury. The jury determined it against the defendant. For this reason, as well as that announced in the opinion of the Commission of Appeals, the judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed."

T. & N. O. Ry. v. Harrington (Tex. Com. App.) 235 S. W. 188, was a suit by the widow and surviving children of Claude Harrington to recover of the railroad company damages for his death, which was occasioned by being struck by the locomotive of a passenger train on a public road crossing. A judgment in favor of the plaintiffs was reversed by the Court of Civil Appeals. In the opinion it was noted that there was abundant evidence to show that the deceased could have seen the approaching train when it was 350 feet from the crossing. In an exhaustive opinion written by Justice Powell of the Commission of Appeals, the following was said:

"A person nearing a railroad crossing and seeing an approaching train could, by standing still, avoid injury. That is the absolutely safe course in the premises. But we do not believe that an ordinarily prudent person, in the exercise of ordinary care, would under all circumstances delay his crossing the track until an approaching train had passed. In fact people continually pass in front of moving trains and automobiles. Whether a person doing so would be guilty of negligence would depend upon all the circumstances present at the time. In this connection we quote as follows from the case of Johnson v. Railway Co., 2 Tex. Civ. App. 139, 21 S. W. 274: 'In deciding as to whether or not George Johnson was guilty of negligence in attempting to cross the track in front of the car, it will be necessary for the jury, under proper instructions, to take into consideration all the attendant circumstances, such as the distance the car was from the crossing at the time the attempt was made, the speed at which it was coming, and also the kind of car.' * * *

"Suppose the deceased had seen this train 350 feet, or more, up the track, and had not realized its unlawful rate of speed, but had felt justified in assuming that it was not being operated in excess of the speed provided by the city ordinance, he might, in the exercise of ordinary care, have attempted to cross

the track ahead of the train. We do not think such an attempt would be contributory negligence as a matter of law."

And in support of that conclusion the case of Trochta v. Railway Co. (Tex. Com. App.) 218 S. W. 1038, noted above, was cited with the observation that the facts of that case were quite similar to those in the 'Trochta Case. Upon that and other conclusions reached, the Commission of Appeals recommended that the judgment of the Court of Civil Appeals be reversed, and the cause remanded to that court to pass upon an assignment that had not been discussed, and their recommendation so made was adopted by the Supreme Court. To the same effect are the following decisions of the Supreme Court, in each of which injuries received at a public crossing of a railroad was involved: M., K. & T. Ry. v. Luten (Tex. Com. App.) 228 S. W. 159; M., K. & T. Ry. v. Merchant (Tex. Com. App.) 231 S. W 327.

In the case of G., C. & S. F. Ry. v. Gaddis (Tex. Com. App.) 208 S. W. 895, it was held by our Supreme Court that Jack Gaddis, who was killed on a public crossing in the city of Fort Worth by a passenger train of the railroad company, was guilty of contributory negligence as a conclusion of law, which precluded a recovery of damages by his surviving wife and children. But in that case it appeared that before the deceased entered upon the crossing, and when he was within a few feet thereof, he was warned by a flagman there stationed for that purpose, and, notwithstanding such warning, he voluntarily went upon the crossing after he had turned and seen the train approaching. That fact was of controlling effect in the disposition of the case by the Supreme Court, but in the opinion the following was said:

"Had Gaddis, upon approaching the crossing, seen the train at an approximate distance of 60 or 70 feet, when he himself was some 15 feet from the track, and in good faith believed, judging from the distance and speed of the train, that he had ample time to cross in safety, it may be, under the circumstances, that a jury would be warranted in finding that he was not guilty of negligence. He was a resident of Fort Worth, and no doubt knew of the ordinance, and had the right to assume that the train was not running in excess of the speed limit, unless, from his observation and all the surrounding circumstances, such assumption was not warranted."

We are of the opinion that the last decisions of our Supreme Court which are noted above must control us in the disposition of the assignment of error now under discussion, and that, tested by those decisions, the assignment of error must be overruled, notwithstanding the earlier decisions of the same court noted above, which seem to have announced a different rule.

[4] In the court's charge special issue No.

1 submitted the question of alleged negligence of the defendant in operating the train at a "high" and "reckless" rate of speed when it approached the crossing where Mrs. Browder was killed. Special issue No. 2 immediately following that issue reads as follows:

"Was the negligence of defendants' employés in operating the train at a high or reckless rate of speed at the time and place Mrs. Browder was killed, if you find they did so operate the train, the proximate cause of her death?"

An assignment has been presented to that instruction, which reads as follows:

"Special issue No. 2 of the court's charge as worded is erroneous, in that it is calculated to mislead the jury and cause the jury to believe the court is of opinion the train was operated at a high and reckless rate of speed."

But we do not believe that the instruction was subject to that criticism, since the issue contained the language "if you find they did so operate the train." It will be observed that the criticism is not that the issue as submitted assumed that the defendant was guilty of negligence in that respect, and hence the decision by this court in Hines v. Popino (Tex. Civ. App.) 235 S. W. 1095, is not applicable.

The issue of whether or not the negligence, if any, of the defendants' employés in failing to ring the bell was the proximate cause of Mrs. Browder's death was submitted in substantially the same form. And a like assignment of error is presented to that instruction, which is overruled for the same reason as that given above.

Error has been assigned also to the issues submitted presenting plaintiff's contention that the defendants were guilty of negligence in operating the train at a high rate of speed and failing to ring the bell and in failing to sound the whistle, on the ground that they assumed that such negligence had been established, and that the instructions were therefore on the weight of the evidence. Without undertaking to set out the issues in full, we think it sufficient to say that they were not subject to the criticism presented, since they expressly left the determination of those issues to the jury.

[5] Edwin G. Browder, an adult son of the deceased, was one of the plaintiffs, and the jury awarded him the sum of $1. While Edwin was of age and had left his mother's home, yet his father testified that after he had left home and gone to the state of Oklahoma to live his mother had sent him money with which to buy a suit of clothes. We fail to perceive how the submission of the issue of his right to recover could have influenced the jury to award a greater sum to the other plaintiffs than was allowed, and whether or not he was entitled to recover that nominal

sum will not be determined, since the error, if any, will result in no substantial injury to the appellants.

[6] The total amount of damages awarded was $11,001, apportioned between the plaintiffs as follows: J. P. Browder, the surviving husband, $5,000; Mrs. Susan D. Galloway, a married daughter, $1,000; Loraine Browder, an unmarried daughter, $5,000; and Edwin G. Browder, $1. Error has been assigned to the verdict and judgment for excessiveness, but the assignment must be overruled, since upon consideration of all the evidence we are unable to say that the amount awarded was so clearly excessive as to require a reversal of the judgment.

For the reasons noted, all of appellants' assignments of error are overruled, and the judgment is affirmed.