**TEXAS & N. O. R. CO. v. CROW et al.**
**(No. 1486.)**

Court of Civil Appeals of Texas. Beaumont.
Oct. 8, 1927.

Rehearing Denied. Nov. 30, 1927.

**1. Railroads ⬡⟹348(5)—Evidence held to support findings that train was negligently operated at high and dangerous speed over crossing.**

In action against railroad for death at crossing, evidence *held* sufficient to support findings that train was operated at high and dangerous rate of speed, which, in consideration with other circumstances, constituted negligence.

**2. Railroads ⬡⟹350(16)—Motorist attempting to cross tracks before approaching train held not contributorily negligent as matter of law, notwithstanding warning signals.**

One approaching railroad crossing in closed automobile *held* not, as matter of law guilty of contributory negligence in attempting to cross before approaching train, where view was blocked by another train, notwithstanding evidence that train which struck car sounded whistle and bell, and had light burning, and that electric signal bell at crossing was ringing.

**3. Railroads ⬡⟹350(16)—Failure to stop, look, or listen before crossing railroad is not negligence as matter of law.**

While law imposed on one about to cross railroad crossing duty to exercise ordinary precaution for his own safety, there is no statute requiring him to either stop, look, or listen, and his failure to do so does not of itself constitute negligence as matter of law.

**4. Railroads ⬡⟹324(1)—Whether it is negligence to attempt crossing of railroad track depends on whether reasonably prudent person would have done so.**

Whether one about to cross railroad track is guilty of negligence in attempting to cross depends on whether, under all facts and circumstances, reasonably prudent person would have done so.

**5. Railroads ⬡⟹346(5)—One killed at railroad crossing is presumed to have acted as reasonably prudent person.**

There can be no presumption that one killed at railroad crossing was guilty of contributory negligence, but, in absence of contrary evidence, court must assume that deceased acted as reasonably prudent person would under all circumstances.

**6. Railroads ⬡⟹350(13)—Contributory negligence at railroad crossing is for jury, when facts are disputed or inferences admit of different reasonable conclusions.**

Whether motorist killed at railroad crossing was guilty of contributory negligence in attempting to cross before approaching train is jury question, not only when facts and surrounding circumstances are disputed, but when facts are undisputed, if inferences admit of different reasonable conclusions.

**7. Railroads ⬡⟹324(1)—Act at railroad crossing to constitute contributory negligence as matter of law must violate some law or dictates of common prudence.**

For act of one killed at railroad crossing to constitute contributory negligence as matter of law, it must have been in violation of some law, or so opposed to dictates of common prudence that all reasonable minds would without hesitation conclude that no reasonably careful person would have committed it.

**8. Death ⬡⟹99(4)—$35,350 damages to widow and children for death held not excessive.**

$35,350 for death, apportioned $20,350 to widow, and $5,000 each to three minor children, *held* not excessive.

Hightower, C. J., dissenting on motion for rehearing.

Appeal from District Court, Hardin County; J. L. Manry, Judge.

Action by Mrs. Mattie B. Crow and others against the Texas & New Orleans Railroad Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

F. J. & C. T. Duff, of Beaumont, Baker, Botts, Parker & Garwood, of Houston, and Singleton & Bevil, of Kountze, for appellant.

E. B. Pickett, Jr., of Liberty, for appellees.

O'QUINN, J. On March 19, 1924, C. C. Crow was struck and killed by a locomotive and train of the Texas & New Orleans Railroad Company at a public road crossing in the town of Nome. This suit was instituted by his surviving wife, Mrs. Mattie B. Crow, for herself and as next friend for her three minor children, Clarence M. Crow, Carl C. Crow, and Margaret Crow, to recover damages for his death, and from a judgment in favor of plaintiffs the defendant has appealed.

The grounds of negligence set forth in plaintiff's petition, upon which they based their right to recover, were:

(a) That the train which struck and killed deceased was operated upon and over the public highway crossing at an excessive and dangerous rate of speed, to wit, about 50 miles an hour.

(b) That said train was operated without keeping a reasonable lookout to avoid injuring persons rightfully near to, and upon, said crossing.

(c) That defendant was negligent in failing to give any sufficient warning of the approach of the train by whistle and bell.

(d) That defendant negligently failed to provide and maintain a watchman or flagman at said crossing.

(e) That said crossing was one frequently used by the public at all hours of the day and night, and that upon the occasion in question another passenger train was upon a side track a few feet south of the main line, and that the rear end of the train on the side

track was 30 or 40 feet east of the public road, where it crossed the side track and that, on account of said train being on the side track, the view of deceased as he drove along said highway and approached said railroad crossing was obstructed, and he was thereby prevented from observing the approach of the train from the east; that there were also obstructions that obstructed his view to the west; that under these circumstances defendant knew that said crossing was particularly and unusually dangerous, and failed to take proper precautions to protect and warn persons using or about to use said crossing. All these grounds of negligence, severally and collectively, were alleged to be the proximate cause of Crow's death.

Defendant answered by general demurrer, general denial, and special plea of contributory negligence of deceased in various particulars, specially that deceased drove upon the track without stopping, looking, or listening.

The cause was submitted to the jury upon special issues, in answer to which they found: (a) That the whistle was blown; and (b) the bell rung, as required by law; (c) that the train was operated at a rapid and dangerous rate of speed at the time it approached the highway crossing, under the facts and circumstances surrounding its operation; (d) that such operation of the train was negligence on the part of the defendant; (e) that such negligence was the proximate cause of the injury and death of deceased; (f) that deceased was not guilty of contributory negligence in going upon the railroad track at the public road crossing in question at the time and in the manner he did; and (g) awarding damages in the sum of $35,350, apportioned, $20,350 to Mrs. Crow, and $5,000 each to the three minor children, upon which findings judgment was accordingly entered.

The jury having found that the whistle was blown and the bell rung, therefore the finding that appellant operated its train at a high and dangerous rate of speed upon and over the crossing in question, and that same was negligence, and that said negligence was the proximate cause of the death of deceased, is that upon which, if it can be, the judgment must be affirmed, in the absence of contributory negligence on the part of deceased.

[1] We are of the opinion that the evidence is sufficient to sustain the jury's finding that under the circumstances the train was operated at a high and dangerous rate of speed, and that such operation was negligence. The accident occurred in the town of Nome, near the railway depot, where the public road or highway crossed the railroad track. The time of the accident was 8:29 in the evening, and the train that killed deceased was a fast passenger train that was not scheduled to stop at Nome, and was running late. It was coming from the east and bound west, and deceased was driving along the highway in a closed Ford coupé, going at the time directly north across the track. No. 8, another fast passenger train coming from the west going east, and No. 7, the train that killed deceased, passed at Nome; No. 8 taking the side track on the south of the main line next to and parallel with the highway. No. 8 was slowly moving out as No. 7 approached and ran upon the crossing. Deceased lived at Saratoga. On the morning of the day of the accident he had gone to Beaumont, accompanied by his brother, John Crow, and his nephew, Percy Tomlinson, driving a Dodge car. That day in Beaumont deceased purchased a Ford truck and the Ford coupé in which he was driving when he was killed. Clarence Johnson, a negro, was employed to drive the truck back to Saratoga. The party left Beaumont about 6:30 that evening; the deceased driving the Ford coupé, Johnson the truck, and John Crow and Tomlinson the Dodge.

At the time the road from Beaumont to Nome consisted of partly hard surfaced and shelled road, and partly of just dirt road, and the latter part between China and Nome was in very bad condition, rough, muddy, some holes, and, as described by some of the witnesses, "bad enough to stick in some places," requiring the attention of the drivers to get by. This condition of the road was especially true of the last two miles before reaching Nome, as there had been heavy hauling over this road, cutting it up badly. The highway was the main and much-traveled route from Beaumont to the towns of Sour Lake, Saratoga, and Batson, and their vicinity generally, and the crossing at which the accident happened was the only one in that immediate locality. Travel from Devers to Sour Lake and vicinity also used this crossing. For some two miles the highway ran parallel with the railroad track before reaching Nome, and within 90 feet south of the track, and, just before reaching the crossing, suddenly curved and approached the track at right angles, leading across north. That night the weather was bad, it having rained that evening, was chilly, cloudy, and a drizzling rain still falling at times. The last stop of the train before the accident was in Beaumont. The distance from Beaumont to Nome was about 21 miles. The train was due to leave Beaumont at 7:56. It left, according to the testimony, from five to seven minutes late, arriving at Nome at 8:29. The time for the train to pass Nome was 8:29. The accident occurred at the Nome crossing at 8:29, so that the train arrived at Nome on schedule time. The schedule rate of speed for the train was 36 miles per hour. There was evidence tending to show that the train was running at the rate of 50 to 55 miles an hour, and the engineer stated that it was running at about 35 miles an hour. He testified that he

was permitted to run 50 or 55 miles an hour, if necessary, to make up lost time. Testifying as to when the train left Beaumont, and as to its rate of speed, he said:

"As I said a while ago, I can't say whether I left on time or a few minutes late. I can find out easy. I have got my train report. They make a report on every trip. I do not show any arriving or leaving time. There is a report kept; the train sheet shows that. I won't say that we left Beaumont that night seven minutes late; I don't know. I won't say I did. Even if I did leave late, I was not trying to make up that time where I met No. 8. Before I met No. 8, if I was running late, I was running 50 or 55 miles an hour between those two points, that is, between Nome and Beaumont. * * * If I was late at that time I had the right to run up to 55 miles an hour if I wanted to."

The 21 miles was run in about 26 minutes. That would be near 50 miles an hour. The train ran 800 feet after striking deceased's car, and all the power of the brakes was on. The fireman on No. 7 testified that he saw deceased's automobile approaching the crossing when the train was about 500 feet from the crossing, and the automobile was about 50 feet from the crossing, but that he thought the automobile was going to stop; that, when the train was about 75 feet from the crossing, and the automobile about 20 feet from the crossing he realized that the automobile was not going to stop, and he told the engineer "to hold her," and that the engineer instantly applied the air brakes. The engineer testified that, when the fireman told him "to hold her," he immediately applied the brakes, and further testified:

"I heard the crash of the automobile—the crash of the collision. They had not had time to take hold before the collision."

So it will be seen that the train was going so fast and under such momentum that it traveled 75 feet after the application of the air brakes before they could "take hold" or have effect. Also, according to the testimony of the fireman, the train ran 425 feet while the automobile was going 30 feet, more than 14 times as fast as the automobile, and he said the automobile was going less than 10 miles an hour.

We think the evidence ample to show that the train was operated at a high and dangerous rate of speed, and that this, taken into consideration with the other circumstances surrounding the accident, the nature of the crossing, and the amount of travel over the highway, supports the jury's finding that the operation of the train in the manner and under the circumstances under which it was operated constituted negligence. Railway v. Streich (Tex. Civ. App.) 281 S. W. 295; Railway v. Starling, 16 Tex. Civ. App. 365, 41 S. W. 181; Railway Co. v. Luten (Tex. Civ. App.) 203 S. W. 909; Lancaster v. Browder

(Tex. Civ. App.) 243 S. W. 625; Id. (Tex. Com. App.) 256 S. W. 905.

[2] Appellant insists that the evidence conclusively established its defense of contributory negligence on the part of deceased as a matter of law, and that therefore the judgment should be reversed and here rendered for appellant. The question of contributory negligence was appropriately submitted to the jury, and they found against appellant's contention. Referring to, without repeating, the facts hereinbefore stated, we will add that the railroad track was straight for several miles to the east from the crossing; that there was a side track on the south of the main line, and that another passenger train, No. 8, was on the siding, slowly moving out east as train No. 7, the one that killed deceased, was coming in on the main line going west; that upon approaching the crossing the whistle was blown and the bell rung, and that the headlight on the engine was brightly burning. The electric signal bell at the crossing was also ringing. There was nothing to obstruct the view to the east other than train No. 8, on the side track, if it did. The negro, Johnson, who was driving the truck, approached the crossing ahead of deceased, and, after making the turn in the highway at the crossing, and near same, stopped because he said he heard the whistle of the train and saw the headlight. When deceased, Crow, came up behind Johnson, he did not stop, but passed around him, driving slowly, and continued toward the crossing, and attempted to drive over when he was struck by the train and killed. It was in evidence that it was difficult to judge the distance or the speed of an approaching train by one driving in an inclosed car, especially at night. The front of the automobile was upon or over the south rail of the track, and the hub of the right front wheel of the automobile was caught and imbedded between the third and fourth ribs of the cow catcher of the engine.

[3-5] Can it be said as a matter of law that deceased was guilty of contributory negligence? We do not think so. While the law imposes upon one who is about to go upon a railroad crossing the duty to exercise ordinary precaution for his own safety, yet there is no statute in this state that requires a person about to cross a railroad track to either stop, look or listen, and his failure to do so does not, of itself, constitute negligence as a matter of law. In such cases the question is whether under all the facts and circumstances a reasonably prudent person would have done so, and it is a fact to be found by the court or jury. Frugia v. Railway, 36 Tex. Civ. App. 648, 82 S. W. 814; Trochta v. Railway (Tex. Com. App.) 218 S. W. 1038; Payne v. Young (Tex. Civ. App.) 241 S. W. 1096. Appellant's contention is but its conclusion or presumption, based upon the facts and circumstances in evidence. That there can be

no presumption indulged that deceased was guilty of contributory negligence is well settled. In the absence of evidence to the contrary, we must assume that deceased acted as a reasonably prudent person would under all the circumstances. Railway v. Shoemaker, 98 Tex. 456, 84 S. W. 1049; Wells Fargo & Co. v. Benjamin, 107 Tex. 331, 179 S. W. 513; Railway v. Sterling (Tex. Civ. App.) 260 S. W. 322. It cannot be said as a matter of law that any one or more things that deceased did or failed to do were prima facie the failure to use such care as a reasonably prudent person would have exercised under like circumstances. Railway v. Shieder, 88 Tex. 163, 30 S. W. 902, 28 L. R. A. 538; Railway v. Lee, 70 Tex. 501, 7 S. W. 857. In the last case cited, the defendant railway company asked instructions to the effect that it was the duty of the deceased to make use of his senses of sight and hearing to discover an approaching train, and that, if he was injured by reason of failing to look, when by looking before driving upon the track he could have discovered the approaching train, recovery could not have been had. In passing upon this question, the Supreme Court said:

"Our courts have refused to recognize as the duty of the trial judge to attempt to define duties, neglect of which would be negligence, in absence of statutory definitions of duties which, disregarded, are negligence as matter of law. * * * What is due care under a given group of facts must be determined by the jury by applying the rule as to what, in their judgment, a man of ordinary prudence would have done under the attendant circumstances. It is reasonable that a sane man will not knowingly and recklessly expose himself to imminent bodily danger—that the instincts of self-preservation existed."

See, also, Lancaster v. Browder (Tex. Com. App.) 256 S. W. 905; Id. (Tex. Civ. App.) 243 S. W. 625.

[6, 7] The test to be applied of ordinary care on the part of those using the highway is usually one for the jury, and this is true, not only when the facts and surrounding circumstances are in dispute, but also when the facts may be undisputed, if the inferences from the facts admit of different reasonable conclusions. Bronson v. Oakes (C. C. A.) 76 F. 737; Railway v. Murphy, 46 Tex. 356, 26 Am. Rep. 272; Railway v. Sterling (Tex. Civ. App.) 260 S. W. 320. For the act of deceased to constitute contributory negligence as a matter of law, it must have been in violation of some law, or it must appear so opposed to the dictates of common prudence as that all reasonable minds would, without hesitation, conclude that no reasonably careful person would have committed. Lee v. Railway, 89 Tex. 588, 36 S. E. 63. Deceased was not acting in violation of any law, and we think reasonable men might fairly differ as to the conclusion to be drawn from the facts and cir-

cumstances shown here. Therefore the issue was properly submitted to the jury. In view of the well-settled rule, as announced in Trochta v. Railway (Tex. Com. App.) 218 S. W. 1038; Railway v. Harrington (Tex. Com. App.) 235 S. W. 188; Lancaster v. Browder (Tex. Com. App.) 256 S. W. 905; Railway v. Sterling (Tex. Civ. App.) 260 S. W. 320, and many other cases, without further discussion the contention of appellant is overruled.

[8] Appellant's contention that the verdict is excessive cannot be sustained, and it should be overruled.

Other propositions are presented, but none of them show error, and are all overruled. The judgment should be affirmed, and it is so ordered.

Affirmed.

## On Motion for Correction of and for Additional Findings of Facts.

In response to appellant's motion for correction of and for additional findings of fact, we find:

(a) That portion of the highway after it turned to cross the railway track to the crossing was not boggy or muddy, but was shelled. There were broken places in the shelled surface, described by some of the witnesses as "chug holes."

(b) To the expression in our original opinion "that night the weather was bad, it having rained that evening, was chilly, cloudy and a drizzling rain still fell at times," we add that it was not raining at the time of the accident.

In all other respects we adhere to our statement made in our original opinion.

## On Motion for Rehearing.

HIGHTOWER, C. J. At a former day of the present term of this court we affirmed the judgment of the trial court in this cause, and in due time appellant filed its motion for a rehearing, and on this day a majority of this court reached the opinion and conclusion that the motion should be overruled, and it will be so ordered.

The original opinion affirming the judgment was prepared by Mr. Associate Justice O'Quinn, and I at that time concurred in the disposition then made of this case. I have concluded, however, since very carefully considering appellant's motion for rehearing, that we were in error in the original opinion in holding against appellant's contention that the jury's finding acquitting the deceased, C. C. Crow, of contributory negligence was against the overwhelming preponderance of the evidence touching that issue, and I now think that this court should sustain appellant's contention on that point. I am now thoroughly convinced that the evidence as a whole clearly showed that the deceased, C. C. Crow, at the time he went upon appellant's railroad track, failed to use any degree of

care whatever to ascertain whether or not a train was approaching the crossing at which he met his death. I think this was established by not only positive evidence, but by all the circumstances that were in evidence bearing upon the issue of contributory negligence, and therefore I feel that it is my duty to dissent from the conclusion of my associates that the motion for rehearing should be overruled, and it is my opinion that the motion should be granted, and the judgment be reversed, and the cause be remanded.

I think that, under some of the earlier decisions of the Supreme Court of this state, the deceased, C. C. Crow, was guilty of contributory negligence as a matter of law, but, as I construe some of the more recent decisions of our Supreme Court and the Commissions of Appeals, we could not hold that the deceased was guilty of contributory negligence as a matter of law. The earlier decisions that I have reference to on this point are I. & G. N. Railway Co. v. Edwards, 100 Tex. 23, 93 S. W. 106; Boyd v. Railway Co., 101 Tex. 411, 108 S. W. 813; and Railway Co. v. Price (Tex. Com. App.) 240 S. W. 524. There were many earlier decisions than these according to which the deceased in this case would be guilty of contributory negligence as a matter of law.

But under the conclusion and holding reached by our Supreme Court in the case of Trochta v. M., K. & T. Railway Co., 218 S. W. 1038, and the holding of one of our Commissions of Appeals in H., E. & W. T. Railway Co. v. Barron, 249 S. W. 825, and other comparatively recent decisions following the Trochta and Barron Cases, I think we could not hold in this case that the deceased, C. C. Crow, was guilty of contributory negligence as a matter of law.

It was not my purpose in expressing my dissent from the conclusion of the majority in this case to write an opinion at any length, but merely to express the reason for my dissent, and I shall refrain from doing so.

The motion for rehearing is overruled.