# FEBRUARY, 1912

SABINE TRAM COMPANY v. TEXARKANA & FT. SMITH RAILWAY COMPANY.

No. 2182.   Decided February 7, 1912.

**Railroad Commission—Freight Rate—Penalty.**

In an action for penalties for charging more than the freight rate prescribed by the Railroad Commission for a shipment by rail to Port Arthur, the evidence is held to support and to require a finding that such rate did not cover transportation to Port Arthur Docks, a point beyond the city limits of Port Arthur, about three miles from that station, and one- where a station was maintained and passenger tickets sold between that place and the city, it being reached by separate trains and crews, made up at the city, and operating partly over tracks owned by the railway company and partly over those of the Port Arthur Channel and Dock Company. The penalty was therefore not recoverable.

Error to the Court of Civil Appeals, Fourth District, in an appeal from Jefferson County.

The Sabine Tram Company sued the railway company for over-

charges and penalties and recovered judgment. On appeal by defendant the judgment was reversed and rendered in its favor. Appellee, plaintiff, then obtained writ of error.

*Greer & Minor,* for plaintiff in error.—The demand made by the railway company for freight charges was for service under the bills of lading issued or the contracts thus made, and not upon any other or different contract naming some other destination. Therefore, the court erred in sustaining appellant's second assignment of error and the proposition under it, and in holding, as a matter of law, that the freight charges collected were not for transportation of the lumber in question between Ruliff and Port Arthur, and were not a violation of the Railroad Commission rate of four cents per hundred pounds fixed as a legal charge for such service. Texas & N. O. Ry. Co. v. Sabine Tram Co., 121 S. W., 256. We do not believe that, in the light of the facts and the law, there is but one Port Arthur; and that, since the railway company has been in the habit of switching and delivering freight at the docks when destined to Port Arthur, it must necessarily be held that the docks are within the switching limits of Port Arthur, just as it is held that all points reached by switch tracks and spurs around the station of any city, are within the switching limits of that station and belong to it as a part thereof.

*S. W. Moore,* and *Glass, Estes & King,* for defendants in error.— Appellee having based its suit on alleged overcharges of one cent per hundred pounds on the order of the Railroad Commission of Texas fixing four cents per hundred pounds as the legal rate on lumber shipped from Ruliff, Texas, to Port Arthur, Texas, cannot recover such alleged overcharges or penalties where the undisputed proof shows that said lumber was shipped to a point different to and beyond Port Arthur, Texas, and over the rails of another company, where said Railroad Commission of Texas has fixed no rate, and where it is not alleged or shown that the rate charged and collected was unreasonable or too high. Railway Co. v. Campbell, 91 Texas, 551; Murray v. Railway Co., 63 Texas, 407.

At the time all of the lumber mentioned in plaintiff's petition was tendered to appellant for shipment and shipped and delivered at the Port Arthur docks appellant had published and filed a schedule of its tariffs and rates applying on such lumber from Ruliff to Port Arthur, where such lumber moved beyond Port Arthur to the docks of the Port Arthur Canal & Dock Company. Said tariff was effective August 1st, 1906, and the rate named in said tariff and schedule of rates was five cents per hundred pounds from Ruliff to Port Arthur. Constitution of U. S., art. 1, sec. 8; Acts of Congress known as Inter-State Commerce Acts and the Hepburn Act; Houston Dir. Nav. Co. v. Insurance Co., 89 Texas, 1; Gaines v. Railway Co., 75 Texas, 572; State v. I. & G. N. Railway Co., 71 S. W., 994; State v. G., C. & S. F. Ry., 44 S. W., 542; State v. So. Kans. Ry., 49 S. W., 252; M., K. & T. Ry. v. Fielder, 46 S. W., 663; G., C. & S. F. Ry. v. Fort Gr. Co., 72 S. W., 419; Railway Co. v. Barry, 45 S. W., 814; Swift & Co. v. U. S., 196 U. S., 390; Armour Co. v. U. S., 209 U. S., 56; Railway

Co. v. Simms, 191 U. S., 448; Railway Co. v. I. C. C., 162 U. S., 197; Hanley v. Railway Co., 187 U. S., 617; R. R. Com. of La. v. Railway Co., 144 Fed., 68; Rosenbaum Gr. Co. v. Railway Co., 130 Fed., 46; Globe Elevator Co. v. Andrews, 144 Fed., 871; Cutting v. Railway Co., 46 Fed., 641; Cosmopolitan Shipping Co. v. Hamburg-American Packing Co., 13 I. C. C. Rep., 266; Baer Bros v. Railway Co., 13 I. C. C. Rep., 329; Eichenberg v. Railway Co., 14 I. C. C. Rep., 250; In Re Tariffs on Exports and Imports, 10 I. C. C. Rep., 70; U. S. v. Railway Co., 153 Fed., 630.

Mr. Chief Justice Brown delivered the opinion of the court.

The Sabine Tram Company instituted this suit in the District Court of Jefferson County against the Texarkana & Ft. Smith Railway Company to recover overcharges of one cent per hundred pounds on lumber shipped from Ruliff over the railroad to Port Arthur, alleging that the Railroad Commission of Texas had fixed a rate of four cents per hundred pounds for lumber shipped from the station Ruliff to Port Arthur, also plaintiff sought to recover the statutory penalty prescribed for such overcharges.

We copy from the opinion of the Court of Civil Appeals, as follows: "The rate, as fixed by the Commission from points on appellant's line north of Beaumont, was in this language: 'To Beaumont, Port Arthur, Sabine Pass four cents per hundred pounds.' 'Port Arthur docks' was not situated within the city limits of Port Arthur. It was something over three miles from the station in Port Arthur. The city limits were about a quarter of a mile from appellant's station, and from there the distance was about two and a half miles. In going from the station to Port Arthur docks the lumber was carried over the rails of appellant about one mile, and then over the rails of the Port Arthur Canal and Dock Company a distance of 2.6 miles to the docks. Appellant had a trackage arrangement with said Canal & Dock Co. by which it used the latter's tracks. A passenger train was operated between Port Arthur and Port Arthur docks, and a minimum charge of twenty-five cents was the passenger fare between the two points; and an agent was kept at the docks to sell tickets to Port Arthur, and the agent at Port Arthur sold tickets to the docks; there was no houses between the yards, depot and warehouse in Port Arthur and Port Arthur docks, the space being unoccupied except by railroad tracks that run across it. A witness stated: 'Any cars we have brought from the docks to town we pay switching charges on them, or any we sent out from town * * *. On one occasion they set a car out there for me to load some chain and I shipped them to Deweyville, they issued me a bill of lading in town when I went for it, other than freight charges they made a charge of $3.00 or $6.00 for switching charge for bringing the car into Port Arthur, that has existed a long time.'

"It was testified to that all this lumber was taken charge of by a separate train crew when it arrived at Port Arthur, which crew operated a train between Port Arthur and the Port Arthur docks and carried it there; that on local shipments the cars would be side-tracked at Port Arthur and the lumber delivered locally there, but

all lumber for export and interstate shipments by coastwise movement was carried out to the Port Arthur docks, 3.7 miles beyond Port Arthur.

"Up to and about the time when the five cent rate was collected appellant had been collecting of plaintiff and same consignees the four cents rate for the same service. There was no separate station at the docks, and any local freight going to or from the docks was billed to or from Port Arthur. In like manner when freight was shipped to the Gulf Refining Company, at Port Arthur, which plant also was beyond the tracks of appellant and the Dock Company's track had to be used in reaching it, the cars were switched there. These points in the immediate vicinity of Port Arthur reached by switching appear to have been understood and acted upon as within the designation 'Port' in matters affecting freight, both by appellant and by these shippers."

There was sufficient evidence to sustain the finding by the Court of Civil Appeals that the rate of the Commission applied to Port Arthur and not Port Arthur docks, which finding is conclusive upon this court. Indeed, under the undisputed evidence the question became one of law, that the order of the Commission did not apply to Port Arthur docks.

We agree with the Court of Civil Appeals that there being no rate to Port Arthur docks, therefore, there could be no penalties incurred.

It is ordered that the judgment of the Court of Civil Appeals be affirmed.

*Affirmed.*