LANCASTER et al. v. BROWDER et al.*
(No. 490–3887.)

(Commission of Appeals of Texas, Section A. Dec. 20, 1923.)

1. Railroads ⊙➾350(26)—Contributory negligence of decedent held for jury.

Evidence that decedent, when last seen alive, was crossing the track with the oncoming train 100 feet away, the headlight shining on her; and that she was walking fast, and had practically effected a safe crossing, when on account of the unusual speed of the train she was struck, precludes the court from saying as a matter of law that decedent was negligent in attempting to cross.

2. Appeal and error ⊙➾930(1)—Evidence on appeal considered in most favorable light to party obtaining verdict.

The appellate court should consider the evidence in the light most favorable to the party obtaining the verdict.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by J. P. Browder and others against J. L. Lancaster and another, as receivers of the Texas & Pacific Railway Company. Judgment for plaintiffs was affirmed in 243 S. W. 625, and defendants bring error. Affirmed.

Shropshire & Bankhead, of Weatherford, for plaintiffs in error.

Ritchie & Ranspot, of Mineral Wells, for defendants in error.

BLANKS, J. At a public street or road crossing in the town of Gordon, containing 600 to 800 inhabitants, Mrs. Julia Browder was on November 24, 1920, struck and killed by a train of the Texas & Pacific Railway Company, operated by plaintiffs in error, Lancaster and Wallace, as receivers.

Suit for damages was instituted in the district court of Palo Pinto county by her surviving husband and children, was submitted to a jury on special issues, and resulted in an apportioned verdict and judgment for $11,001, from which an appeal was prosecuted by the receivers to the Court of Civil Appeals for the Second Supreme Judicial District, and the judgment affirmed by that court, 243 S. W. 625, and writ of error has been granted by the Supreme Court.

The facts are concise and uncontradicted. The railroad of plaintiffs in error runs practically east and west through Gordon, and is intersected at right angles a short distance east of the depot by the main street of the town, and such intersection was the main public crossing of the town and surrounding community. A few stores and the post office are located on the north side, approximately 150 feet from the track, and other stores, bank, and restaurant on the south side, some as far as 300 feet removed therefrom, and the residential population apparently about evenly divided in point of numbers by the railroad track.

Among other trains operated by plaintiffs in error through the town was one known as the "Sunshine Special," a fast train not scheduled to stop at Gordon, and due to pass through the town from the east at about 6 o'clock p. m., but at the time of the accident was about an hour later and running faster than usual to make up time. Mrs. Browder had been for several years in charge of the post office at Gordon, and was daily accustomed to go about 7 o'clock in the evening from the post office on the north side of the track to collect the mail, necessitating her use of the crossing on her return to the post office. She was necessarily familiar with the schedule of the trains on this railroad and knew the "Sunshine Special" was a fast train and did not stop at Gordon. There was no eyewitness to the accident, and one witness only saw Mrs. Browder in proximity to the track, and he testified that prior to the arrival of the train he gave Mrs. Browder some letters to mail at a restaurant about 300 feet south of the track and fronting on the main street, and walked north toward the track about 40 or 50 feet, talking casually with her, when they parted, she going north toward the track and the witness returning to the restaurant. He next saw Mrs. Browder going on to the railroad track, her large Collie dog by her side, and, quoting him:

"I saw the train at the instant I saw Mrs. Browder on the track. The headlight was burning very bright. She was in the glare of the headlight at the moment I saw her on the track. She was walking in a 'peart gait'; walking as she usually did; she was a fast-walking

woman. She was walking fast at the moment I saw her. I would estimate the train was something about 100 feet away at that time, something like that, moving at a rapid rate of speed."

He then testified that his attention was called from Mrs. Browder to a man and two young ladies driving up in a small car, and further said:

"At the moment I saw Mrs. Browder on the track with this train approaching, had it been running at its usual and ordinary rate of speed, considering the rate she was traveling, in my opinion she could have cleared the track."

There was testimony that the train was running down grade, and that when so running, made less noise in operation than usual, and that it was difficult to correctly gauge the distance of an oncoming train in the glare of a bright headlight.

Different witnesses estimated the speed of the train through the town at from 35 to 50 miles per hour, and variously described its motion as "very rapid," or "running fast."

Some three hours after the train had passed, Mrs. Browder's body was found about 60 feet west and 12 feet north of the track, and the body of the dead Collie dog about 25 feet still further west of Mrs. Browder's body. Neither of the bodies were mangled, but Mrs. Browder had a wound on the right side of her head, and her right shoulder, arm, hip, and leg were broken, and the letters she was carrying to the post office were scattered along the north side of the track at various intervals from 6 feet west of the crossing up to her body.

The operatives of the train knew nothing apparently about the occurrence, as the train sped on without slackening its speed, and the receivers offered no testimony on the trial of the case.

The jury found that the plaintiffs in error were negligent in failing to sound the whistle for the crossing, in failing to ring the bell while approaching the crossing, and in running the train at a "high or reckless" rate of speed, and also found successively that each several act of negligence above stated was the proximate cause of Mrs. Browder's death, and in response to further special issues found that Mrs. Browder was "not negligent" in trying to cross the track at the time and place she did, and also that "the negligence, if any, of the deceased in trying to cross the track," was not the cause of her death.

Upon consideration of the case by the Court of Civil Appeals the findings of the jury that the proximate cause of Mrs. Browder's death was either the failure to sound the whistle or ring the bell, were rejected, upon the ground stated in the opinion that:

"It conclusively appears from the uncontroverted facts and testimony already recited that Mrs. Browder saw the headlight and knew of the approach of the train before and at the time she went upon the crossing. That being true, it follows conclusively that neither the negligence of the defendants found by the jury in failing to sound the whistle nor the negligence in failing to ring the bell could be held to be the proximate cause of Mrs. Browder's death, since the only purpose that could have been accomplished by giving such signals would be to warn pedestrians of the approach of the train, a fact which Mrs. Browder knew independent of such signals. H. & T. C. Ry. Co. v. Nixon, 52 Tex. 19."

But the Court of Civil Appeals finds the jury to have been warranted by the evidence in concluding that the train was being run at a "high or reckless," rate of speed, and that such negligence was the proximate cause of Mrs. Browder's death.

We have carefully considered the various authorities referred to in the decision of the Court of Civil Appeals, and are of the opinion that they are not irreconcilable, nor in substantial conflict.

The facts of each case are different, however slight such difference may be; but a single circumstance, inconsequential when considered alone, may be sufficient, when taken in connection with all the other facts and surrounding circumstances, to, in the minds of all reasonable persons, make negligence appear conclusive, and therefore, a matter of law, or, on the other hand, to create a situation where reasonably minded persons may very properly differ in their conclusions—thus, in the latter case, presenting a question of fact, a jury question strictly, and one in which the determination of the jury must be, and has always been, held conclusive. It would be obviously impracticable to attempt such a comprehensive statement of what facts would establish "negligence as a matter of law" as to constitute either a conclusive or even substantially helpful guide in the determination of all cases presenting that bare question. And in none of the cases referred to by the Court of Civil Appeals has the Supreme Court undertaken this profitless adventure into the realms of the purely abstract.

It seems to us that this case is easily distinguishable from the facts in that line of cases of which that of I. & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106, is typical, and also such cases as Sanches v. S. A. & A. P. Ry. Co., 88 Tex. 117, 30 S. W. 431; Railway v. Ryon, 80 Tex. 61, 15 S. W. 588; Haass v. G. H. & S. A. Ry. Co., 24 Tex. Civ. App. 135, 57 S. W. 855; S. & E. T. Ry. v. Dean, 76 Tex. 73, 13 S. W. 45, and other cases referred to in the opinion of the Court of Civil Appeals in this case. It is also equally as distinguishable from T. & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; Trochta v. Railway Co. (Tex. Com. App.) 218 S. W. 1038; M. K. & T. Ry. Co. v. Luten (Tex. Com. App.) 228 S. W. 159,

and M. K. & T. Ry. Co. v. Merchant (Tex. Com. App.) 231 S. W. 327.

We are foreclosed, for lack of jurisdiction, from consideration of the question whether or not Mrs. Browder's death was proximately caused by the failure of the operatives of the train to sound the whistle or ring the bell when approaching this crossing, by reason of the Court of Civil Appeals' conclusion of fact that Mrs. Browder both saw and knew of the approach of the train, there being at least circumstantial evidence to warrant this conclusion of fact. Article 1590, R. S.; Hunter v. Eastham, 95 Tex. 648, 69 S. W. 66; Sabine Tram Co. v. Tex. & Ft. Smith Ry. Co., 105 Tex. 32, 143 S. W. 143.

And by reason of this conclusion by the Court of Civil Appeals the doctrine announced by Phillips, C. J., in the addendum to the case of Trochta v. M. K. & T. Ry. Co. (Tex. Com. App.) 218 S. W. 1038, and restated in several subsequent cases, to the effect that the failure of a pedestrian approaching a railroad crossing to look and listen for an approaching train is not negligence per se, has no application to the instant case. The object in looking and listening is manifestly to ascertain whether or not a train is approaching, and under the court's finding Mrs. Browder saw the train approaching.

[1, 2] So we have here the bare question of whether or not seeing the approaching train she was negligent as a matter of law in attempting to cross at the time, place, and in the manner she did.

The instant case is very similar, in point of apparent hazard of the deceased in attempting the crossing, to the case of G. C. & S. F. Ry. Co. v. Wagley, 15 Tex. Civ. App. 308, 40 S. W. 538, a well-considered opinion by Justice Finley, of the Dallas Court of Civil Appeals, and in which a writ of error was denied by the Supreme Court. In that case, Dr. Wagley saw the train 160 yards away, coming into the station. The train was running at from 12 to 25 miles per hour and was from 20 to 30 minutes late. In that case the court says:

"Just before he started to cross the track, his daughter-in-law remarked to him he had better get on the other side of the track. When he started to do so, Boyd spoke to him in warning, but he ran or walked across the track to the platform, going in a diagonal direction, according to some of the witnesses, and had just reached the edge of the platform, and was in the act of stepping up on it, when he was struck by the engine. The platform was about 15 inches to 2 feet high. There is a conflict of evidence as to the distance the engine was from Wagley when he reached the track and attempted to cross. Some of the witnesses say it was but 12 or 15 feet away. The majority of them say it was near the water tank, which was 90 to 100 feet south of the point where he was struck. All of the witnesses who were at the station that night appear to have seen the train from the time it came in sight, and nearly all of them speak of its rapid rate of speed. There was evidence that, from Wagley's position at the point where he started to cross the track, he might not have been able to discover the rapid rate of speed or the nearness of the engine, both from the fact that it was coming directly towards him in the darkness, and also from the glare of the headlight. Several of the witnesses declare that they thought that he had time to get across, and that, taking into consideration the distance of the train and the distance Wagley had to go and the gait at which he went, there was time to have crossed the track but for the rapidity with which the engine reached the depot."

Required in the case here being decided in deference to the findings of the jury to consider all testimony from the angle most favorable to the defendants in error (Kirksey v. So. Traction Co., 110 Tex. 190, 217 S. W. 139, and cases there cited), it seems that, when last seen alive, Mrs. Browder was in the middle of the track with the Collie dog by her side, going north with the oncoming train 100 feet away, the headlight shining brightly on her, and she was "walking fast." The witness, whose testimony is quoted above, thought so little of any imminent danger threatening Mrs. Browder as to have his attention attracted from her by the casual conversation of some young ladies just driving up in a car. The position of her body and the scattered letters along the track, and the fact that neither her body nor that of the dog was mangled, indicates that she had practically effected a safe crossing when, on account of the unusual speed of the train, she was, in some manner, struck.

It is true that in the Wagley Case, supra, the proof showed the train was being run at a rate of speed in violation of a city ordinance of Cleburne, limiting the speed to 6 miles per hour; but in the instant case, under the finding of the jury, and they were well warranted in the conclusion, the speed of the train was such as to be reckless and dangerous, and the consequences from the reckless and dangerous operation of a train across a much-traveled public crossing are as serious and the negligence as culpable as if the train were being run in violation of an express ordinance on the subject. Tex. Elec. Ry. Co. v. Stewart (Tex. Civ. App.) 217 S. W. 1084, and authorities there cited.

In the decision of the case of G., C. & S. F. Ry. Co. v. Gaddis, 208 S. W. 895, by Justice McClendon of the Commission of Appeals, he distinguished that case from the Wagley Case by pointing out that Gaddis persisted in going upon a crossing at which a flagman was stationed, and nowithstanding the warning of the flagman that he desist from the attempt, but in the discussion of the case says:

"Had Gaddis, upon approaching the crossing, seen the train at an approximate distance of 60 or 70 feet, when he himself was some 15

feet from the track, and in good faith believed, judging from the distance and speed of the train, that he had ample time to cross in safety, it may be, under the circumstances, that a jury would be warranted in finding that he was not guilty of negligence. He was a resident of Ft. Worth, and no doubt knew of the ordinance, and had the right to assume that the train was not running in excess of the speed limit, unless, from his observation and all the surrounding circumstances, such assumption was not warranted."

Judge Caldwell, in Bronson v. Oakes, 76 Fed. 737, 22 C. C. A. 520, happily and accurately draws the distinction between the functions of the jury and the court in determining the issue of negligence, saying:

"It is well settled that what constitutes negligence is a question of fact for the jury, and it does not cease to be such although the facts are undisputed, for that would be to deprive a suitor of his constitutional right to have the material facts in his case tried by a jury. Whether, upon the conceded facts in this case, the act of the defendant was negligent, is the principal and ultimate fact in the case, and the decision of this fact, like any other disputed fact in a case, rests with the jury, and not with the court. The question of contributory negligence is likewise one of fact for the jury. There is no statute or law which defines the quality of every human action, and stamps it in advance as either negligent or prudent. The law cannot anticipate the conduct and actions of men in all the varying and multiplied relations they sustain to each other, and declare in advance what shall be esteemed prudent and what negligent. The facts and circumstances of this case, as they are disclosed by the complaint, differ from the facts and circumstances of any case that ever occurred before, or any case that is likely to occur in the future. It is manifest, therefore, that if the court should decide, as a matter of law, that these facts and circumstances do or do not constitute negligence in law, it would be a case where the decision made the law, and not the law the decision. And hence the doctrine is firmly established that these questions of negligence are questions of fact for the jury to determine, and not questions of law for the court; and this is the rule where the facts are conceded as well as where they are disputed."

In one of our earlier cases, T. & P. Ry. Co. v. Murphy, 46 Tex. 356, 26 Am. Rep. 272, Justice Roberts, in discussing this very situation, says:

"Chief Justice Cooley, in a very able and searching review of the cases upon the subject of contributive negligence, says that 'negligence consists in a want of that reasonable care which would be exercised by a person of ordinary prudence, under all existing circumstances, in view of the probable danger of injury.' "'As a general rule, it cannot be doubted that the question of negligence is a question of fact, and not of law.' And while admitting that there are plain cases, in which it has been held that the judge may rightfully instruct the jury, as matter of law, that the action cannot be maintained, he says: 'The case, however, must be a very clear one, which would justify the court in taking upon itself this responsibility.' 'But while there is any uncertainty, it remains a matter of fact for the consideration of the jury.' The court, in taking this responsibility, must assume to be the judge of the proper standard of ordinary prudence, which would likely be different with different judges; and each judge would make his standard of prudence the law of the case, and thereby the law would change with a change of judges, who might be called upon to administer it. It is only necessary to examine the numerous reported cases to see the different opinions of different judges upon the subject."

Further, he says, after citing differing opinions of the Supreme Courts of Massachusetts and Pennsylvania:

"The same diversity of opinion may be found to prevail upon nearly every fact relating to the subject of negligence, in the different courts of the different states of the Union. It must be considered also that no two cases ever came into court with exactly the same combination of circumstances, and that every new case must present some shade of difference from every other, in its facts. Must we now, in the inception of our adjudications upon this subject, start out in the search through the thousands of reported cases, to find the opinions of judges, as to the common and ordinary standard of prudence, in reference to every act, and every combination of acts relating to negligence, or shall we follow the plain command of our own statute, by submitting to the decision of the jury, as the sole judges thereof, the fact of negligence as well as all other facts in every case?"

The foregoing is referred to as indicative of what has consistently been the settled policy of the Supreme Court of this state in the determination of negligence cases.

As stated by Chief Justice Gaines in the case of Railway Co. v. Gasscamp, 69 Tex. 545, 7 S. W. 227:

"The issue of contributory negligence was submitted to the jury, and has, by the verdict, been determined in plaintiff's favor. This is conclusive of the question, unless we can say that the act of plaintiff was negligent in law, or at least that it tended so strongly to establish negligence on his part that the verdict should not be permitted to stand. According to the rule in this court, in order that an act shall be deemed negligent per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it."

It follows from the foregoing conclusions that we recommend the affirmance of the judgments of the Court of Civil Appeals and district court.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.