CHICAGO, R. I. & G. RY. CO. v. PIPES et al.

No. 12354.

Court of Civil Appeals of Texas. Fort Worth.
July 12, 1930.

Rehearing Denied Oct. 11, 1930.

Lassiter, Harrison & Pearson, of Fort Worth, for appellant.

Samuels, Foster, Brown & McGee, of Fort Worth, for appellees.

BUCK, J.

This is a suit by Mrs. Mary Eugenia Pipes, a feme sole and surviving widow of Richard E. Pipes, deceased, and A. B. Pipes and wife, Mrs. Eula Pipes, the father and mother of Richard E. Pipes, who sue for his death in a railway accident as a result of a collision between the north-bound Chicago, Rock Island & Gulf Railway Company train and the car in which Richard E. Pipes was riding.

The accident occurred in the early morning of February 4, 1928. The evidence shows that Mr. Pipes and his wife spent the night before the accident at Arlington Heights at her mother's home. That they drove together in their Ford coupé, leaving her mother's home about 6 o'clock, and went to 803 Houston street, Fort Worth, where Mrs. Pipes was working at the time. Pipes usually reached his place of employment, at the Magnolia Petroleum Company, about 8 o'clock, starting to his work about 7:30, but the morning of the accident he started earlier, and, on account of rain, did not wait at the place of his wife's employment, but went on his way towards his work. His wife oftentimes went in the car with him and also went for him in the afternoon. As Pipes was going east on Twenty-Third street, he crossed the Fort Worth & Denver City Railway tracks, and as he approached the Rock Island tracks, a train was going north. When he reached the place where the railway tracks crossed Twenty-Third street, there were a number of automobiles on each side of the tracks, standing still, evidently waiting for the on-coming Rock Island train to pass; the engineer had whistled, and the glare of the headlight lighted up the track. Pipes probably slowed up but did not stop, and, as he attempted to cross, his car was hit by the on-coming train and he was fatally injured, dying about 12:05 p. m. that day in a hospital.

An ordinance of the city of Fort Worth limits the speed of railroad trains within the city limits to 18 miles an hour. The evidence shows that this train was running in excess of such speed, or about 25 miles an hour or more.

H. D. Miller, a driver of a bus for the Northern Texas Traction Company, testified that the train was running about 25 miles an hour. Other witnesses put the speed of the train higher. When the train struck the Ford car, just as it was nearly across the track, it carried it down the track some distance. R. H. Boyce, a witness for plaintiff, testified that in his opinion the train was running that morning about 35 or 40 miles an hour.

The cause was submitted to a jury, and the jury found: (1) That the running of defendant's train at a speed in excess of 18 miles an hour immediately and prior to the time of the accident was the proximate cause of the death of Richard E. Pipes; (2) that the failure of defendant to have installed and in good working order at the crossing in question an adequate signal bell which would ring loud enough to give persons approaching said crossing notice of the approach of a train was negligence, as defined in the charge; (3) that such negligence was a proximate cause of the death of Richard E. Pipes; (4) that the failure of defendant at the time of the accident to have a flagman or watchman at the crossing in question for the purpose of keeping watch for trains of defendant, and to warn the public having occasion to cross such track, was negligence; (5) that such negligence was a proximate cause of the death of Richard E. Pipes; (6) that the construction and maintenance of defendant's depot or station near the intersection of East Twenty-Third street obstructed the view and prevented Richard E. Pipes from seeing the approaching or on-coming train; (7) that the maintenance of such obstruction did not constitute negligence on the part of defendant; (8) that Richard E. Pipes did not stop his car which he was driving just before he started to cross defendant's track at the place of the collision; (9) that the failure of Richard E. Pipes to so stop his car was not negligence; (10) that Richard E. Pipes looked to see if a train was approaching said crossing before he started to cross defendant's track; (11) that Richard E. Pipes, before he started to cross defendant's track, listened to discover the approach of said train; (12) that Mary E. Pipes has suffered damages in the sum of $5,682.50, by reason of the death of her husband.

Upon the verdict so returned, the court rendered judgment for Mrs. Mary E. Pipes and against the Chicago, Rock Island & Gulf Railway Company, a corporation, in the sum of $5,682.50, together with interest from date of judgment, and all costs of suit.

A. B. Pipes, the father of the deceased, having testified that his son was not at the time of his death contributing anything to the support of his father and mother. A. B. Pipes and Eula Pipes, the court rendered judgment against them as to any claim for damages urged by them. From this judgment the defendant has appealed.

The evidence showed that the watchman employed by the defendant railway company was not required to begin his duties until 7 o'clock a. m.; that the accident occurred about 6:15 a. m.

The defendant submitted to the court a peremptory charge in its favor. At least the majority of us have concluded that such peremptory instruction should not have been given. By undisputed testimony, defendant was running its train on the morning of the accident in excess of 18 miles an hour; the speed being variously estimated from 25 to 40 miles an hour. The jury found in response to special issues submitted that the depot constructed by defendant obstructed the view and precluded the deceased from seeing the approach of the on-coming train on the morning of the accident, but that the construction of such depot, and permitting it to remain where it was, was not negligence on the part of the defendant railroad company; that Richard E. Pipes was not guilty of negligence in not stopping his car before driving on defendant's tracks; and that deceased did listen and did look for the approach of trains on defendant's tracks at the point of collision.

The evidence showed that the flagman was present, probably in the shack, at the time the accident occurred. It will be remembered that the accident occurred about 6:15 a. m. on February 4, 1928. At that time of the year it was still dark when the accident occurred. While a person might hear the noise of an approaching train and see the glare of the headlight, yet he might not be able to determine upon what track the train was running, and the evidence showed that deceased was nearly clear of the track when his car was hit by the approaching train. If the train had not been running in excess of 18 miles an hour, he would have been across and the accident would not have occurred.

Several witnesses testified for plaintiff as to the number of vehicles ordinarily passing at this time of day along this street intersecting the railroad tracks. Damon Davis, county engineer of Tarrant county, testified that traveling east over Twenty-Third street one crosses three tracks, the Fort Worth & Denver, the Gulf, Colorado & Santa Fé, and the Chicago, Rock Island & Gulf. That one crosses not only the main lines of these railroads, but various switch tracks. That these tracks intersect East Twenty-Third street for a distance of some 200 feet. That standing near this crossing are two depots and the flagman's shanty; the depots are north of the crossing and the flagman's shanty is south of the crossing; the depots to the north belong to the Fort Worth & Denver and to the Rock Island.

H. B. Miller, plaintiff's witness, testified that he saw the Ford coupé as he was approaching the Fort Worth & Denver track, and that it was probably 20 or 30 seconds before the crash came. That he supposed the coupé ran about 30 or 40 feet after he first saw it before it collided. That it seemed to him that the coupé slowed up for a second or two and then went ahead. That as he (Miller) approached the crossing he heard several different whistles blowing.

R. H. Boyce, witness for plaintiff, who had been working at Swift & Company's plant for more than three years, testified that there were some 25 or 30 automobiles waiting to cross the tracks while the defendant's train was across the tracks after the accident. These vehicles accumulated during the "tie-up" of some thirty minutes. Therefore, appellees insist that evidently the defendant was guilty of negligence in not keeping a watchman at the crossing all the time, or in not keeping a signal bell in good operating condition. It is urged by appellees that the view of the deceased up the track of defendant north of the crossing was obstructed by the building which the railroad company had built so near Twenty-Third street, and that such depot building obstructed the view of a person traveling in an easterly direction and about to cross defendant's tracks until such person was almost upon the tracks. That if the deceased had heard the whistle of defendant's train and had seen the headlight, the jury would have been justified in believing that it was the whistle of one or the other of the engines shown to have been north of the crossing at the time of the accident; that assuming that the deceased heard the whistle of defendant's train and saw the headlight, the jury may have probably concluded that the deceased would be justified in presuming that the train would not travel at an unlawful rate of speed at the crossing, and if such had been the case there would have been ample time to cross the tracks before the train reached the intersection where the accident occurred. The majority at least agree with these reasons advanced and overrule appellant's fourth proposition.

Appellant urges error in the failure of the trial court to submit this issue:

"Do you find and believe from the evidence that the deceased would have discovered the approach of the train by keeping a reasonable lookout, in time to have stopped before going on the crossing?"

It will be remembered that the jury was asked to find: Whether deceased stopped his car just before he started across the track, and, if not, whether this was negligence, and the jury found that he did not stop the car and that such failure was not negligence. Furthermore, the issue was submitted to the jury as to whether the deceased, before he started to cross the track, looked to see if the train was approaching, and the jury answered that he did; and whether before he started across the track he listened to discover the approach of a train, and the jury found that

he did. These appear to be the only issues submitted as to the contributory negligence of the deceased. Appellant urges that they do not go far enough, that the finding of the jury does not touch the question whether he should have looked and listened sooner, and whether by looking and listening at a proper distance from the crossing, he would have discovered the train in time to avoid the accident; or, in other words, whether, by the use of reasonable care for his own safety he would have escaped injury. That it may be that the deceased was negligent in not discovering the train sooner, and that "just before" he started to cross defendant's track at the place of the collision, limited the matter of negligence of the deceased to the particular time "just before" he started to cross the track. That in the exercise of reasonable care for his own safety, the jury might have found, if the issue had been submitted to them, that if the deceased had looked and listened sooner, at a proper distance from the crossing, he would have discovered the train in order to have avoided the accident. That the jury may have had in mind in answering questions 9 and 10 that the deceased may not have seen the train until he was so close to the track that he could not then stop. But that it may be that he was negligent in not discovering the train sooner. We conclude that the trial court should have submitted issue No. 2, and for the failure to do so, the judgment must be reversed and the cause remanded.

In the defendant's trial answer, it pleaded "that the deceased, Richard E. Pipes, was well acquainted with the crossing where the accident occurred and knew that the public road on which he was traveling crossed the railroad tracks at that point, and knew that a train might be expected to pass along the track at any instant; and it was his duty in the exercise of ordinary care and caution for his own safety to keep a reasonably careful lookout, before going on the track, for the approach of a train in order to avoid being struck."

We think that this allegation sufficiently raised the issue tendered and refused, if such allegation was supported by the evidence. While it is difficult to point out the testimony of any particular witness in support of the allegation above referred to, yet we think the jury might have properly concluded from all of the evidence that the deceased did not exercise reasonable care and prudence anterior to the time "just before he started to cross defendant's tracks.".

In Montrief & Montrief v. Bragg, 2 S.W.(2d) 276, by the Commission of Appeals, the court stated the well-recognized rule that a defendant has the right to an affirmative presentation to the jury of any facts or group of facts relied on in his pleading as a defense and raised by the evidence, which, if true, would establish such defense.

H. D. Miller, witness for plaintiff, in testifying as to how near the track it would be necessary for a traveler to approach before he could look past the depot and see up the track north, said:

"In approaching this crossing from the west, as to how close you have to get to the west rail of the Rock Island track before you can see past that depot enough to see a train approach, I will say that to be safe you have got to drive just as close to the track as you can, and then stop and look up the track. The Rock Island depot is the thing that obstructs your view when you get near the track, and that little window sticking out there a few feet helps to cut off some of the view. That projection has a window in each side of it, and you can look through those windows and see through there."

R. H. Boyce testified that he and his brother-in-law were in a Ford car on the morning of the accident on the east side of defendant's tracks, and about 50 yards from it, when the accident happened. That they had stopped there to let the train pass; that they were caused to stop because of hearing the train whistle, and his idea was that the train was then about 100 yards up the track. On cross-examination he testified:

"I was in a closed automobile and I heard the train whistle when it was approximately 100 yards up the track, and hearing the whistle, I stopped to let it go by."

W. W. Finney testified:

"I saw this Ford deceased's car coming, and I wondered to myself if the fellow was going to drive right up on the track; he was not going very fast, but I don't have any idea how fast. I heard the train whistle back up there, and that is the reason I stopped before I got on the track. * * * I heard the train coming, and stopped to let it go by. * * * I stopped in about 20 or 30 feet from the track on which the train was traveling. * * * Mr. Boyce drove up behind me and stopped. * * * The first thing that attracted my attention to this train was that as I was coming along there I heard the train whistle back up in the yards. I suppose it was about one quarter of a mile from the crossing when I heard it whistle. * * * I did not pay any attention to the noise of the train, because I was looking for the train. I did not have to listen for the noise. I guess I could have heard the noise if I had listened. A train running about 30 miles per hour would necessarily cause a good deal of noise. * * * In approaching this crossing from the west, if there are any cars in there, you practically have to get up on the track before you can see any distance up past the depot, because the depot is right in the way; of course, if the train is down near the crossing you can see it very well; if it is above the depot, you have to get up on the track

before you can see it. * * * In my opinion, the south end of the depot is about 100 feet north of the point of the accident, and I guess the depot is about 75 or 100 feet long. I guess it would figure out that if you were standing 15 feet west of the track you could see a train 200 feet north of the point of the collision."

Other witnesses testified to practically the same facts and conclusion.

For the reasons stated, the judgment below is reversed, and the cause is remanded.

CONNER, C. J.

I concur in the reversal of the judgment below and in the order remanding the case for another trial, for the reasons that I do not feel quite prepared to say that the evidence is such that appellant's requested peremptory instruction in its favor should have been given. However, in view of the closeness of the evidence on the vital issue of the alleged contributory negligence of the deceased Richard E. Pipes, I think the court should have also given appellant's special instructions Nos. 3 and 4, reading as follows:

"3. Do you find and believe from the evidence that by the use of reasonable care for his own safety before going on the crossing, the deceased would have discovered the approach of the train in time to avoid the accident?

"4. Do you find and believe from the evidence that by the use of reasonable care for his own safety the deceased would have stopped before going on the crossing at the place of the accident?"

DUNKLIN, J., not sitting.

On Appellant's Motion for Rehearing.

BUCK, J.

The evidence showed that the deceased had gotten almost across the track when the rear end of the car was hit. H. D. Miller testified:

"I don't know exactly how far the Ford ran after it seemed to slow up before it was hit by the engine; the engine hit the back of the car right along at the back wheels of it—I guess he ran two or three or four feet after the time he seemed to slow up before he was struck by the engine; something like that.

"I cannot say how far the engine was up the track at the time the Ford seemed to slow up; it had not yet come from behind the depot."

Therefore, if the train had been running 18 miles an hour, the rate limited by the ordinance, the deceased would have gotten across the track, and been clear of the approaching train. R. H. Boyce testified that in his opinion the train was running from 35 to 40 miles an hour. Perhaps other witnesses estimated the speed of the train higher. Another witness fixed the speed of the train at 30 miles an hour. In order for one to be free from the charge of contributory negligence, as a matter of law, in going across a crossing, it is not necessary that he stop and listen. Beaumont, S. L. & W. Ry. Co. v. Sterling (Tex. Civ. App.) 260 S. W. 320, application for writ of error dismissed for want of jurisdiction; Trochta v. M., K. & T. Ry. Co., 218 S. W. 1038, by the Commission of Appeals, approved by the Supreme Court; Lancaster v. Browder (Tex. Civ. App.) 243 S. W. 625, affirmed 256 S. W. 905, by the Commission of Appeals, approved by the Supreme Court. In Texas & N. O. Ry. Co. v. Harrington, 235 S. W. 188, 193, by the Commission of Appeals, and approved by the Supreme Court, the court said:

"Suppose the deceased had seen this train 350 feet, or more, up the track, and had not realized its unlawful rate of speed, but had felt justified in assuming that it was not being operated in excess of the speed provided by the city ordinance, he might, in the exercise of ordinary care, have attempted to cross the track ahead of the train. We do not think such an attempt would be contributory negligence as a matter of law. As to whether or not it was such negligence was a question of fact for the jury. As sustaining our views in this connection we refer also to the following authorities: Southern Traction Co. v. Gee (Tex. Civ. App.) 198 S. W. 993; Railway Co. v. Hall, 98 Tex. 480, 85 S. W. 786."

We conclude that appellant's motion for rehearing should be overruled, and also appellees' motion for rehearing.

DUNKLIN, J. (dissenting).

On account of his absence, the writer did not sit in the original disposition of this appeal by the majority of the court. However, after consideration thereof on the motion for rehearing, he has reached the following conclusions. He concurs with the majority in the conclusions reached on all assignments of error except that addressed to the action of the trial court in refusing appellant's request for an instructed verdict in its favor as to the plaintiffs' suit in its entirety. The majority of this court has overruled appellants' assignment of error addressed to that ruling on the ground that the evidence did not conclusively show that deceased was guilty of contributory negligence for reasons noted in the opinion, which may be briefly stated as follows:

First, because the evidence was sufficient to show that by reason of defendant's depot building deceased could not and did not see the train until he was almost on the railroad track and too late to escape injury; second, even though the jury had believed that deceased heard the whistle of the locomotive

and had seen its headlight, still they would have been warranted in finding that he might reasonably have concluded that the whistle and headlight were from one of the other engines shown to have been north of the crossing; third, assuming that he heard the whistle of the train in question and saw its headlight, yet the jury was warranted in concluding that he assumed, and was warranted in assuming, that the train would not run at the speed it was running and which was in violation of the law, and but for which excessive speed he would have crossed the track without injury. I respectfully dissent from that ruling of the majority and believe that the trial court erred in refusing appellant's request for an instructed verdict in its favor for the following reasons:

Plaintiff introduced the following named witnesses: H. D. Miller, who was approaching the crossing from the west and just behind the deceased, and driving a bus; R. H. Boyce and W. H. Hill, who were traveling west in the same car, which was stopped on the east side of the crossing; and W. W. Finney, who was traveling in another auto in a westerly direction and whose car was likewise stopped at the east side of the crossing. And according to the uncontradicted testimony of those witnesses, proof of the following facts was conclusively established: As appellant's train approached the crossing where the accident happened and at a distance of at least 100 yards north of the crossing, the locomotive whistle was sounded and the bell rung and the bell kept ringing as it moved toward the crossing. It was then dark and the headlight of the engine was shining down the track to the south and across the place of the accident. All those witnesses heard the blasts of the whistle and the ringing of the bell, and saw the reflection of the headlight down the track; and all stopped their cars to wait for the train to pass the crossing; and their testimony was also corroborated by other witnesses, including T. R. Thomas, introduced by the defendant, who was riding on the bus with said witness H. D. Miller; and as the deceased approached the crossing from the west side, the two cars in which witnesses Boyce, Hill, and Finney were riding had already stopped and were standing on the east side and were facing the deceased and they were in plain view of the deceased. When Miller stopped his bus he was 150 feet west of the crossing; he then saw deceased in his Ford car ahead of him approaching the crossing from the west at a speed of about ten miles an hour at a distance of some 30 or 40 feet from the crossing. Other evidence introduced showed conclusively that at that point deceased had already passed the Fort Worth & Denver Railway track on the west, thus showing that there was then no other track ahead of the deceased on which the train could have been moving except appellant's track on which the accident occurred. According to the further testimony of Miller, his view of the coming train was obstructed by appellant's depot building until the locomotive passed the south end of that building, which other evidence showed was about 82 feet north of the crossing in question; and the jury would have been warranted in finding that the deceased did not see the locomotive or train sooner than Miller saw it; and other testimony introduced tended to show and was sufficient to support a finding that when deceased first saw the locomotive approaching he was then about to go upon the crossing or was so near thereto as to render it impossible for him then to stop his car in time to avoid being struck. Furthermore, testimony introduced showed that deceased was familiar with the crossing and its surroundings and that he had frequently driven over it prior to the time of the accident.

Assuming that the deceased did not see the train until it was too late for him to stop his car before going on the crossing, yet that fact was no excuse for his failing to avoid the accident by stopping his car before he reached the crossing, since, according to the uncontradicted testimony noted above, before he saw the train, he must necessarily have heard the signals sounded by the locomotive and seen the reflection of the headlight down the track immediately in front of him, and therefore must have known of the train's approach in time to have stopped his car before reaching the crossing. The failure to see the train sooner than he did see it would become material in the event only that he did not sooner know of its approach. And therefore the fact that his view of the train was obstructed by the depot building, of itself, furnishes no proper basis for denying appellant's request for an instructed verdict. Furthermore, accepting as true the testimony of some of plaintiffs' witnesses already noted, that by reason of the location of the depot building deceased was unable to see the train until the front of the locomotive reached a point at or about the south end of that building, and which testimony is stressed in briefs for appellees, then it must follow that in that situation it was obviously more hazardous for deceased to continue his course across the track without stopping, and manifestly inexcusable in him to take such a risk when, from the headlight of the engine, noise of the train, locomotive signals, and the stopping of two autos in front of him on the east side of the crossing, he must have known before seeing the train that it was approaching and in close proximity to the crossing, and that it might probably reach it before he could pass over.

The further contention that the jury might have concluded that the deceased probably believed that the locomotive's signal which he

heard, and the headlight which was shining down the track, emanated from some other engine shown to have been in the yards north of the crossing at the time of the accident, is equally untenable, since the shining of the headlight down and on the track immediately in front of him and plainly in his view would conclusively refute such an inference.

The further point made that the jury reasonably could and probably might have drawn the inference that when deceased saw the train approaching he assumed that it was not running faster than eighteen miles an hour because that was the limit of speed fixed by the city ordinance, and that by reason of that assumption the jury reasonably could have concluded that he was not guilty of negligence in undertaking to cross the track on the occasion in controversy.

Notwithstanding the fact that it conclusively appears that had not the train been running at a speed in excess of 18 miles an hour, deceased would have cleared the track in time to escape being struck, yet in the opinion of the writer, appellee's contention, just stated, is untenable for the reason that in order to sustain it, it would be necessary to indulge several inferences, and to build one upon another, all without any direct evidence to prove any of the facts so presumed, as follows: First, the inference that deceased knew of the speed ordinance of the city in question, and had it in mind when he saw the train approaching; second, that he then estimated the distance the locomotive was from the crossing at that time, and also the rate it was traveling, and also the rate of speed his automobile was moving; and, third, that after considering all those facts and circumstances, he reached the conclusion that he would have time-sufficient to pass over the crossing before the locomotive reached it. And in this connection it is to be noted that according to plaintiff's contention, deceased did not see the train until the locomotive reached a point at or about the south end of the depot building; and according to undisputed proof the south end of that building was only .82 feet from the crossing, thus rendering it extremely doubtful, to say the least, that he then had time to consider the facts so inferred. As announced by our Supreme Court in Fort Worth Belt Ry. Co. v. Jones, 106 Tex. 345, 166 S. W. 1130, 1132:

"A presumption of fact cannot rest upon a fact presumed. The fact relied on to support the presumption must be proved."

And in that opinion the court quoted with approval the following from another authority cited:

"No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest must be established by direct evidence, as if they were the facts in issue. One presumption cannot be based on another presumption."

Nor could a further inference be indulged that the deceased expected a watchman to be at the crossing to give signals of the approach of the train and relied upon him to do so, because there was no watchman present at the crossing; and, furthermore, he already knew that the train was approaching, and could not, in reason, ignore its approach merely because no watchman had warned him of it. This point was not made the basis of the opinion of the majority in overruling the assignment of error now under discussion, but I deem it proper to note it, since negligence in failing to have a watchman at the crossing was made one of the grounds for a recovery by the plaintiffs.

In International & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106, a judgment in favor of the plaintiff for an injury sustained by him in being struck by the engine of a passing train at the crossing of a railway over a public country road was reversed by the Supreme Court, and judgment was rendered by that court denying a recovery. In that case the following was said:

"The evidence, without contradiction, shows that the plaintiff walked along the road at night, approaching the railroad obliquely with his side towards it, until he came near the crossing when he turned with the road across the track, and was struck as he reached the center thereof. The train was visible by its electric headlight upon a straight track for a mile or more before it reached the crossing and the noise of its motion was plainly audible. Plaintiff admits that, before stepping on the track, he neither looked, nor listened for the train, although he was familiar with the crossing, and knew of the frequent passing of trains; and that he could have seen and heard it, had he done so. All of the other evidence is to the same effect. He relies alone upon the fact, which the evidence is sufficient to prove, that the whistle was not blown nor the bell rung as required by the statute, claiming that he was listening for those signals, and, because he did not hear them, did not look for the train nor pay any attention to the noise it made.

"The law is well settled that a traveler approaching a railroad crossing must exercise ordinary prudence in going upon the track to see that he may do so with safety. He cannot excuse the absence of all care by showing that those in charge of a train have also been guilty of negligence. This is the precise attitude of the plaintiff, when he claims that he was not bound to look out for himself until the statutory signals were given. His claim cannot be admitted without denying the rule which exacted the duty of due care on his part, a duty as binding on him

as was the duty of giving signals binding on the defendant. The case is easily distinguished from those in which this court has held that, under the facts thereof, it would have been improper for the courts to have instructed that it was the duty of the travelers to do any particular thing as a measure of due care, such as to look and listen, it being the function of the jury to say what precautions were called for by the particular situation. Those cases presented issues for the jury to determine as to whether or not the care taken was sufficient, and not bare facts, like those in this case, establishing that no care whatever was taken and offering no excuse for its absence except a reliance on the other party. * * *

"While persons using a railway crossing have the right to expect that the law requiring signals will be obeyed, this is not a substitute for the duty of exercising care for themselves and they are not excused from that duty by the fault of the other party. No case in this court has allowed a recovery upon facts such as these and the judgment cannot be permitted to stand without abolishing the rule recognized by all authority, requiring the exercise of ordinary prudence on the part of persons crossing railroad tracks."

. In the case of Galveston, H. & S. A. Ry. Co. v. Price (Tex. Com. App.) 240 S. W. 524, 526, a judgment in favor of Mrs. M. S. Price against the railroad company for damages for the death of her husband, who was killed while in the act of crossing the defendant's track at its intersection with a public street in the town of Luling, was reversed by the Supreme Court and a judgment was rendered denying plaintiff any recovery, in accordance with the opinion of the Commission of Appeals. In that opinion there is an extended review of many prior decisions, and the conclusions reached in that case are reflected in the following excerpts from the opinion:

"The uncontradicted evidence and the specific findings of the jury present a clear case of a pedestrian stepping in front of a slowly moving train under circumstances which present no excuse for his not discovering it.

"The contention of defendant in error that Mr. Price was not guilty of contributory negligence as a matter of law is based upon the repeated holdings of our Supreme Court to the effect that the law does not prescribe any particular acts or omissions as constituting ordinary care or its absence; that in accordance with this rule it is not negligence as a matter of law for one about to cross a railroad track not to stop, look or listen, and that whether a failure to do so in a particular instance constitutes a failure to exercise ordinary care is usually a question of fact to be determined by a jury. * * *

"We do not regard any of the decisions of our Supreme Court as in any way trenching upon the rule that negligence and contributory negligence do become questions of law, when but one reasonable conclusion can be drawn from the facts and circumstances of the case. The specific question here presented is whether one who in the possession of his faculties steps immediately in front of a moving train, the approach of which is unobstructed from his view, and which could be seen and heard by him by the use of his ordinary faculties or by taking any precautions whatever, is guilty of contributory negligence as a matter of law when he fails to use his ordinary faculties and as a result thereof is injured.

"There are several cases by our Supreme Court in which this precise question has been adjudicated, in each of which the answer was in the affirmative. Railway v. Bracken, 59 Tex. 71; Railway v. Kutac, 72 Tex. 647, 11 S. W. 127; Railway v. Dean, 76 Tex. 73, 13 S. W. 45; Sanches v. Railway, 88 Tex. 117, 30 S. W. 431; Railway v. Edwards, 100 Tex. 22, 93 S. W. 106; Bennett v. Railway, 36 Tex. Civ. App. 459, 82 S. W. 333; Railway v. Kauffmann, 46 Tex. Civ. App. 72, 101 S. W. 817. Writs of error were refused in the last two cases. The basis of this rule is embraced in the following quotation from Railway v. Gaddis (Tex. Com. App.) 208 S. W. 895: 'All men in possession of their faculties are charged with knowledge that a railroad track is a dangerous place, and the law will not permit them to go upon the track, even at a public highway, without being charged with a recognition of the danger attending such action and the use of such care as ordinary prudence would dictate in so doing. Where no care whatever has been exercised, our courts uniformly hold that contributory negligence exists as a matter of law, and recovery is denied.'"

And the court further quotes from opinions of the Supreme Court, including the following from Sabine & East Texas Ry. Co. v. Dean, 76 Tex. 73, 13 S. W. 45, in which case a judgment against the railroad company in favor of the widow and children of John Dean, who met his death by being run over by one of defendant's trains, was reversed and judgment was rendered in favor of the railroad company, and after referring to the testimony introduced, the court used this language:

"The 'evidence is not contradicted. But one conclusion can be drawn from it, and that is that when there was nothing to prevent his seeing his danger he heedlessly stepped upon the track at the very moment of the collision.'"

Many other decisions might be cited in which judgments in favor of persons injured on railroad tracks were reversed and judgments were rendered in favor of the defendants upon the conclusions reached by the courts of last resort that the injured persons

were guilty of contributory negligence as a matter of law. We shall cite only a few of them: Northern Texas Traction Co. v. White (Tex. Civ. App.) 19 S.W.(2d) 416 (writ dismissed); Ft. Worth & Denver City Ry. Co. v. Bell (Tex. Civ. App.) 14 S.W.(2d) 856 (writ dismissed); Texas & N. O. Ry. Co. v. Wagner (Tex. Civ. App.) 262 S. W. 902 (writ dismissed 114 Tex. 375, 269 S. W. 1024); Frias v. G., H. & S. A. Ry. Co. (Tex. Civ. App.) 266 S. W. 547 (writ dismissed); San Antonio & A. P. Ry. Co. v. Singletary (Tex. Civ. App.) 251 S. W. 325 (writ dismissed). See, also, Baltimore & O. Ry. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645.

While many other decisions might be cited in which it was held that the particular facts of those cases did not conclusively show, as a matter of law, that the injured party was guilty of contributory negligence, yet I believe they are not in conflict with the authorities cited above when properly analyzed. Furthermore, in an opinion of the Commission of Appeals, approved by the Supreme Court, in the case of Lancaster v. Bowder, 256 S. W. 905, it was held that there was no conflict between that line of cases typified by the case of International & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106, and including many other decisions expressly mentioned—in all of which it was held that the persons injured were guilty of contributory negligence as a matter of law—and subsequent decisions in which it was held that whether or not the persons injured were guilty of contributory negligence was a question for the jury and not one of law to be decided by the court.

Tested by the decisions cited above, and here relied on, which are believed to be especially applicable to the facts of this case, the writer has reached the conclusion that the evidence introduced conclusively showed, as a matter of law, that the deceased was guilty of negligence proximately contributing to his injury in attempting to cross appellant's track, under the uncontradicted facts above related, and therefore that the assignment of error now under discussion should be sustained, the judgment of the trial court reversed, and judgment here rendered that appellees take nothing by this suit.